CHRISTOPHER M. PETERSON, ESQ.
Nevada Bar No.: 13932
SOPHIA A. ROMERO, ESQ
Nevada Bar No.: 12446
**AMERICAN CIVIL LIBERTIES
UNION OF NEVADA**
601 South Rancho Drive, Suite B-11
Las Vegas, NV 89106
Telephone: (702) 366-1226
Facsimile: (702) 366-1331
Email: peterson@aclunv.org
Email: romero@aclunv.org
*Attorneys for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| KELVIN GORDON, an individual; LILITH MCGRATH, an individual; KIANA FULLMORE, an individual; and the AMERICAN CIVIL LIBERTIES UNION OF NEVADA FOUNDATION, INC., a domestic nonprofit corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> THE CITY OF LAS VEGAS, a local municipal government entity; and FREMONT STREET EXPERIENCE, LLC, a domestic limited liability company; <br><br> Defendants. | Civil Action No.: |

### <u>VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

The Plaintiffs, KELVIN GORDON, LILITH MCGRATH, KIANA FULLMORE, and the

AMERICAN CIVIL LIBERTIES UNION OF NEVADA FOUNDATION, INC., hereby bring this

Verified Complaint for Declaratory and Injunctive Relief. Plaintiffs are seeking an order declaring

portions of the City of Las Vegas Municipal Code Chapter 11.68 and regulatory actions taken by

the City on the Fremont Street Pedestrian Mall, as void as unconstitutional in violation of the First

Amendment of the United States Constitution; prohibiting Defendant, the CITY OF LAS VEGAS ("the City")[1] from favoring certain speakers and requiring equal treatment of all speakers in the public forum; prohibiting Defendant, THE FREMONT STREET EXPERIENCE, LLC ("FSE") (collectively referred to as "Defendants"), from regulating the protected First Amendment activity of others, whether individual or business, in the public forum where FSE also engages in First Amendment activity; and, through a Special Event Permit issued by the City, imposing an unconstitutional curfew on adults under the age of 21. Plaintiffs are also seeking costs and attorney's fees.

## I.   SUMMARY OF THE CASE

The First Amendment protects a range of expression, including artistic, political, and religious activity. It is a fundamental principle that "[i]n the realm of private speech or expression, government regulation may not favor one speaker over another." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 828 (1995), *cited by Perry v. Los Angeles Police Dept.*, 121 F.3d 1365, 1371 (1997). Furthermore, the government cannot favor commercial speech over activity that receives those highest protections under the First Amendment, which includes non-commercial solicitation, artistic performances, and speech that is political and religious in nature.

The Fremont Street Pedestrian Mall is a traditional public forum, where First Amendment rights are at their strongest. However, the strongest presence on the Pedestrian Mall is not the City of Las Vegas but rather FSE, a private corporation working under the authority of the City. The City, pursuant to LVMC 11.68, has explicitly recognized that FSE engages in expressive conduct

---

[1] State and local governmental agencies may be sued without naming members of their governing bodies; service. Any political subdivision, public corporation, special district, or other agency of state or local government which is capable of being sued in its own name may be sued by naming it as the party without naming the individual members of its governing body in their representative capacity. In addition to any other method which may be provided by statute or rule of court, service may be made upon the clerk or secretary of the political subdivision, corporation or agency. Nev. Rev. Stat. § 12.105.

on the Pedestrian Mall, such as performing a "celestial vault lightshow" and hosting concerts, as well as commercial speech such as advertising FSE's business interests. FSE, as a corporation, has the First Amendment right to engage in such activities. But LVMC Chapter 11.68 also imposes significant regulations on core First Amendment activities, including solicitation, expressive activity, and performing arts, regulations from which FSE alone is exempt. LVMC Chapter 11.68 also explicitly favors FSE's expressive activities over others, such as requiring individuals engaging in artistic expression to cease their performances if FSE is hosting a concert or performing its lightshow. Perhaps most egregiously, the City, via LVMC Chapter 11.68, has unlawfully empowered FSE to actually regulate the expressive activities of other people in the public forum, authorizing FSE to change the locations where other people may engage in artistic performances, to unilaterally shut down the entire Pedestrian Mall to the general public, and to bring suit against individuals that FSE deems to have violated the regulations governing otherwise protected First Amendment activities.

As made clear in *Berger v. City of Seattle*, any system used by the City to regulate speech can only be in the form of a reasonable regulation on the time, place, and manner of the speech and must be 1) content-neutral; 2) narrowly tailored to address a significant governmental interest; and 3) must leave open ample alternative channels for communication of the information. 569 F.3d 1029, 1035-36 (9th Cir. 2009). Such a system may not favor a speaker in that forum over others, nor can it favor commercial speech over artistic, political, religious, or other expressive activities, which receive the greatest protections under the First Amendment.

Here, the City uses excuses like overcrowding and noisiness to justify its regulation of core First Amendment activity on the Fremont Street Pedestrian Mall, yet it exempts from regulation the greatest source of noise and crowding: FSE. No street performer is as loud as the overhead

speakers operated by FSE. No street performer causes crowding to the extent that FSE concerts, events, and attractions do.

As has become evident in recent weeks, FSE has gone to extremes to undercut the First Amendment protections that have long existed for all who frequent Fremont Street by imposing a curfew for *adults* under the age of 21 on Fremont Street.  For clarity, an existing city-wide curfew exists for those under 18 within the boundaries of the City of Las Vegas,[2] but that wider curfew is not subject to a challenge herein. The unconstitutional curfew at issue here emanates from a special event permit egregiously issued by the City to FSE on July 12, 2022. This permit runs from July 8, 2022, through November 22, 2022, and restricts access to Fremont Street every Friday, Saturday, and Sunday between 8:00 p.m. (imposed at 9:00 p.m.) and 5:00 a.m. to those over the age of 21.  No exceptions are permitted, including for First Amendment activity.  The special event listed within the permit, "Festivus", is an unadvertised and fictitious five-month long event that was created singularly to create an illusion of a valid time, place, and manner restriction, despite the fact that this curfew flies in the face of the Constitution and doesn't satisfy *any* level of scrutiny. While FSE and the City have continuously spoken about the need for public safety, FSE's rationale behind this adult curfew has no connection to such an argument.

To demonstrate just how convoluted the relationship between the City and FSE has become, FSE *continues* to impose this curfew on those under 21 predicated on the "special event permit" it received from the City, despite the Las Vegas City Council's refusal to advance a curfew proposal on August 3, 2022, restricting those under 21 from accessing the Fremont Street Pedestrian Mall.  That proposal followed a Las Vegas City Council Recommending Meeting on August 1, 2022, during which time the Recommending Committee expressed reservations about

---

[2] LVMC 10.54.010

the imposition of a curfew on adults and concurrently asked for a data presentation to justify the proposed curfew. The City of Las Vegas subsequently issued a public statement about the August 3, 2022, curfew proposal and stated, in pertinent part, "The City Council decided not to move forward with the curfew ordinance at this time so that the safety enhancements that are in place can be fully evaluated."  FSE continues however to ban those under the age of 21 from entering the corridor between 9 p.m. and 5 a.m. every Friday, Saturday, and Sunday pursuant to the aforementioned Special Event Permit, and will do so, at a minimum, through the end of November of 2022, denying adults the ability to access a public forum without any justification for doing so.

## II.    **PARTIES**

1.      Plaintiff, KELVIN GORDON, is, and was at all times relevant herein, a resident of the State of Nevada, County of Clark, City of Las Vegas.

2.      Plaintiff, LILITH MCGRATH, is, and was at all times relevant herein, a resident of the State of Nevada, County Clark, City of Las Vegas.

3.      Plaintiff, KIANA FULLMORE, was at all times relevant herein, a resident of the State of Nevada, County Clark, City of Las Vegas.

4.      Plaintiff, the AMERICAN CIVIL LIBERTIES UNION OF NEVADA FOUNDATION, INC., is a domestic nonprofit corporation. ACLU of Nevada is the Nevada affiliate of the American Civil Liberties Union, a nationwide, nonprofit, non-partisan organization with nearly 500,000 members, approximately 4,000 members in the State of Nevada, including members between the ages of 18 and 21. The ACLU of Nevada works to defend and advance the civil liberties and civil rights of all Nevadans.

5.      Defendant, CITY OF LAS VEGAS, is a municipal corporation, organized under the Las Vegas City Charter, created by and operating under the laws of the State of Nevada and,

pursuant to Nev. Rev. Stat. 12.105, may be served with process herein by service upon the Las Vegas City Clerk, located at 495 S. Main St. Las Vegas, Nevada 89101.

6.      Defendant, THE FREMONT STREET EXPERIENCE, LLC, is, as was at all times relevant herein, a domestic limited liability company, organized and existing under and by virtue of the laws of the State of Nevada, and may be served with process by service upon its commercial registered agent, Childs Watson, PLLC, 3271 E. Warm Springs Rd. Las Vegas, Nevada 89120.

### III.    JURISDICTION & VENUE

7.      This Court has original jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343(a)(3), and 28 USC §1343(a)(4) as this is a question under the First Amendment of the U.S. Constitution, brought pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988, and supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any other claims relating to the Las Vegas Municipal Code.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants operate in Clark County, Nevada.

### IV.    STANDING

9.      Plaintiffs bear the burden of establishing standing for each type of relief sought. *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1148 (2009).

10.     In *Skaff v. Meridien N. Am. Beverly Hills, LLC*, the United States Court of Appeals for the Ninth Circuit held:

> Constitutional standing has three elements. First, the plaintiff must have suffered an "injury in fact" that is concrete, particularized, and actual or imminent. Second, there must be a causal link between the injury and the conduct of which the plaintiff complains. Third, it must be likely that a favorable decision will redress the plaintiff's injury.

506 F.3d 832, 837 (9th Cir. 2007).

11.    "In First Amendment cases, 'it is sufficient for standing purposes that the plaintiff intends to engage in a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff.'" *Am. C.L. Union of Nevada v. Heller*, 378 F.3d 979, 984 (9th Cir. 2004), *citing LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1154–55 (9th Cir.2000).

12.    The United States Supreme Court has held that "threatened action by *government* is concerned [does] not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29, 127 S. Ct. 764, 772, 166 L. Ed. 2d 604 (2007) (emphasis in original).

13.    "The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction." [3] *Id.*

14.    "A facial First Amendment challenge can be brought against the regulation of "spoken words" or where a statute by its terms regulates the time, place and manner of expressive or communicative conduct." *Nunez v. City of San Diego*, 114 F.3d 935, 950 (9th Cir. 1997).

### A.    <u>STANDING OF INDIVIDUAL PLAINTIFFS</u>

15.    Plaintiff, KELVIN GORDON ("Mr. Gordon"), is a registered street performing artist, performing regularly on the Fremont Street Experience and is continually subject to Las Vegas Municipal Code 11.68 et. seq., which is at issue here. Specific factual allegations which support standing are found below in Section B of the Statement of Relevant Facts labeled "Facts Specific to Plaintiff Kelvin Gordon".

---

[3] *See also Steffel v. Thompson*, 415 U.S. 452, 58-60 (1974) (The Supreme Court did not require the plaintiff to attempt to distribute handbills and risk prosecution to have standing for a declaratory judgment action regarding the constitutionality of the statute prohibiting distribution).

16.     Plaintiffs, LILITH MCGRATH ("Ms. McGrath") and KIANA FULLER ("Ms. Fuller"), are both 18 years old. On August 12, 2022, at 9:25 pm, they tried to enter the Fremont Street Pedestrian Mall to view artistic performances by street performers, take photographs and videos, and walk the corridor. FSE Security denied them entry to the corridor because they are under the age of 21.  Specific factual allegations which support standing are found below in Section C of the Statement of Relevant Facts labeled "Facts Specific to Plaintiffs Lilith McGrath and Kiana Fuller".

17.     Plaintiff, AMERICAN CIVIL LIBERTIES UNION OF NEVADA FOUNDATION, INC. ("ACLU of Nevada"), is a local non-profit. The ACLU of Nevada has previously engaged in expressive activities protected by the First Amendment on the Fremont Street Pedestrian Mall, including artistic performances, engaging in public education campaigns, and soliciting donations. But for LVMC Chapter 11.68 et. seq the ACLU of Nevada would engage in conduct that is explicitly regulated under LVMC Chapter 11.68, including tabling, handing out leaflets, soliciting donations, and selling ACLU of Nevada merchandise. Additionally, but for the actions of the City and FSE, ACLU of Nevada would invite staff, members, and/or volunteers under the age of 21, including from ACLU of Nevada's collegiate chapter "UNLV People Power", to engage in these activities.

## B.     ACLU OF NEVADA'S ASSOCIATIONAL STANDING

18.     The ACLU of Nevada has standing in this matter because a) its members would otherwise have standing to sue in their own right; b) the interests it seeks to protect are germane

to the organization's purpose; and c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.[4]

19.     As discussed below, ACLU of Nevada's membership and employees face the imminent risk of having their First Amendment Rights violated under the Las Vegas Municipal Code, 11.68 et. seq and through the conduct of Fremont Street Experience, LLC.

20.     As the guardian of civil liberties of all Nevadans for over 55 years, and with approximately 4,000 members, and multiple employees residing in the City of Las Vegas, preventing constitutional violations is of substantial interest to the ACLU of Nevada.

21.     As evidenced by prior litigation surrounding the Fremont Street Pedestrian Mall, the ACLU of Nevada continually works to defend and advance the civil liberties, civil rights, and other fundamental human rights of all Nevadans.

22.     But for Las Vegas Municipal Code 11.68 et. seq and actions of Fremont Street Experience, LLC, the ACLU of Nevada would engage in conduct that is explicitly regulated under LVMC Chapter 11.68, including tabling, handing out leaflets, soliciting donations, and selling ACLU of Nevada merchandise, and would invite staff, members, and/or volunteers under the age of 21, including from ACLU of Nevada's collegiate chapter "UNLV People Power", engage in these activities.

/ / /

/ / /

/ / /

---

[4] "[W]e have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). *Greater Birmingham Ministries v. Sec'y of State for State of Alabama*, 992 F.3d 1299, 1316 (11th Cir. 2021)

## V.     STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

23.     A declaration for each individual Plaintiff, as well as a declaration of the ACLU of Nevada, attesting to the factual allegations in this Verified Complaint, is attached hereto as **EXHIBIT 1**.[5]

### A.     GENERAL FACTS APPLICABLE TO ALL PLAINTIFFS

24.     On May 26, 1983, the Nevada Legislature incorporated the City of Las Vegas, in Clark County Nevada under the Las Vegas City Charter.[6]

25.     In 1993, the State of Nevada enacted the Pedestrian Mall Act which is codified at NRS 268.810 through NRS 268.823.

26.     Also in 1993, through Ordinance No. 3747, the City of Las Vegas designated 5 blocks of the downtown area as a Pedestrian Mall, which is codified in Las Vegas Municipal Code 11.68 et. seq. *See* 1993 Ordinance No. 3747, attached hereto as **EXHIBIT 2**.

27.     Las Vegas Municipal Code 11.68.010 et seq., has gone through various revisions of the statutes surrounding the Pedestrian Mall.[7]

28.     Additionally, a litany of First Amendment litigation has surrounded the various ordinances.[8]

---

[5] Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

[6] *See* https://www.leg.state.nv.us/division/Legal/LawLibrary/CityCharters/CtyLasVegasCC.html.

[7] *See* City of Las Vegas Ordinances: 3924 (1995); 3941 (1995); 5046 (1998); 5866 (2006); 5876 (2007); 5896 (2007); 6131 (2011); 6183 (2012); 6327 (2014); 6329 (2014); 6462 (2015); and 6704 (2019).

[8] *See American Civil Liberties Union of Nevada v. City of Las Vegas*, 13 F.Supp.2d 1064 (D. Nev. 1998); *American Civil Liberties Union of Nevada v. City of Las Vegas*, 168 F.3d 497 (9th Cir. 1999); *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092 (9th Cir. 2003); *City of Las Vegas, Nev. v. American Civil Liberties Union of Nevada*, 540 U.S. 1110; 124 S.Ct. 1077 (2004) (Cert. denied); *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d

29.     In 1993, and through Ordinance No. 3747, the City of Las Vegas designated The Freemont Street Experience, Limited Liability Company ("FSE") as the private operating entity "for purposes of acquiring, constructing, improving, operating, managing and maintaining the Fremont Street Pedestrian Mall." Ex. 2 at 4:9-10.

30.     Las Vegas Municipal Code, Chapter 11.68.060, specifically delegates the authority over the Fremont Street Pedestrian Mall to Fremont Street Experience, LLC: "In accordance with the provisions of the Pedestrian Mall Act, the City Council designates The Fremont Street Experience Limited Liability Company as the private operating entity for purposes of acquiring, constructing, improving, operating, managing and maintaining the Pedestrian Mall."

31.     Las Vegas Municipal Code, Chapter 11.68.070, specifically states:

> Notwithstanding any other provisions of the Las Vegas Municipal Code, and in accordance with the provisions of the *Pedestrian Mall* Act, the City Council delegates to The Fremont Street Experience Limited Liability Company authority to control and regulate within the *Pedestrian Mall* the following:
>
> > (A) The distribution and location of movable furniture, sculpture, devices to control *pedestrian* traffic, landscaping and other facilities that are incidental to the *Pedestrian Mall*;
> >
> > (B) The uses to be permitted or restricted on the *Pedestrian Mall* by occupants of abutting property, utilities (provided such is not in conflict with the rights granted under any franchise agreement), concessionaires, vendors, newspaper vending machines and others to serve the convenience and enjoyment of *pedestrians*, and the location of such uses;
> >
> > (C) The raising of revenue through the imposition of a fee for the use of all or a portion of the *Pedestrian Mall* for special events, commerce or activities to

---

784 (9th Cir. 2006); *American Civil Liberties Union of Nevada v. City of Las Vegas*, No. CVS971419DAELRL (D. Nev. March 17, 2009); and *Peck v. City of Las Vegas*, No. 215CV02070JADPAL, 2016 WL 4697339 (D. Nev. Sept. 6, 2016).

offset the cost of operating and maintaining the *Pedestrian Mall*;

(D) The use of the *Pedestrian Mall* for advertising purposes and the charging of a fee in connection therewith;

(E) The operation of any lighting, heating or other facilities in the *Pedestrian Mall*;

(F) The replacement of any landscaping and maintenance of the furniture and facilities in the *Pedestrian Mall*;

(G) The access to the *Pedestrian Mall* by the public and closure of the *Pedestrian Mall* to the public for purposes of special events or activities for limited periods of time;

(H) Other activities, actions or conduct to promote the best interests of the public and carry out the provision of the *Pedestrian Mall* Act.

The authority delegated herein shall be subject to the City's police power, the provisions of the management agreement and the other provisions of this Chapter and shall not be construed in derogation of the constitutional or statutory rights of any person.

32. Las Vegas Municipal Code, Chapter 11.68.100(B), specifically states:

(B) The following are prohibited within the Pedestrian Mall, except under the conditions stated:

(1) Animals, unless used in connection with a mall activity authorized by The Fremont Street Experience Limited Liability Company or used for the purpose of assisting the visually or aurally impaired;

(2) Mall vending, special events or other commercial activities, unless such activities are conducted by or on behalf of The Fremont Street Experience Limited Liability Company;

(3) The use of unicycles, bicycles and other types of cycles, skateboards, roller skates, in-line skates, hula hoops larger than four feet in diameter, and shopping carts, except as authorized by The

Fremont Street Experience Limited Liability Company in connection with special events and mall entertainment;

(4) The placement of any cart, wagon, table, rack, chair, box, cloth, stand, booth, container, structure or other object within the Pedestrian Mall, except:

  (a) As conducted by or on behalf of The Fremont Street Experience Limited Liability Company; or

  (b) As specifically allowed under Sections 11.68.105 and 11.68.107;

(5) Amplified sound which originates from within the Pedestrian Mall or from properties or businesses abutting the boundaries of the Pedestrian Mall, except where conducted by or on behalf of The Fremont Street Experience Limited Liability Company or as permitted under Section 11.68.107;

(6) The launching or throwing of projectiles or other objects into or through the air, except in connection with events that are conducted by or on behalf of The Fremont Street Experience Limited Liability Company;

(7) Entertainment and related services for which a fee is charged, either before or after the entertainment and related services are performed, except in connection with events that are conducted by or on behalf of The Fremont Street Experience Limited Liability Company;

(8) The distribution of food, beverage or tobacco items, except in connection with events that are conducted by or on behalf of The Fremont Street Experience Limited Liability Company;

(9) Commercial photography, filming or videotaping, except in connection with events that are conducted by or on behalf of The Fremont Street Experience Limited Liability Company;

(10) Lying or sitting on the ground, except:

  (a) In cases of emergency;

  (b) As approved in connection with events that are conducted by or on behalf of The Fremont Street Experience Limited Liability Company; or

(c) By a street performer as part of a performance authorized under Section 11.68.107;

(11) Open flames, except in connection with events that are conducted by or on behalf of The Fremont Street Experience Limited Liability Company; or

(12) Any generator of any sort or any lead acid battery, except in connection with events that are conducted by or on behalf of The Fremont Street Experience Limited Liability Company. The prohibitions contained in this Paragraph (12) do not apply to any battery or power source that is contained within and integral to a commercially manufactured appliance or speaker system unless the battery or power source has been found to be in violation of applicable Fire Code regulations.

33. Fremont Street Pedestrian Mall remains public property. *See* October 20, 1993, Management Agreement, 16:25-26 - 17:1, attached hereto as **EXHIBIT 3**.

34. The United States Court of Appeals for the Ninth Circuit has held that the Fremont Street Pedestrian Mall is a traditional public forum. *Am. C.L. Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1106 (9th Cir. 2003) ("The Fremont Street Experience is a traditional public forum: its public forum status was not destroyed by its transformation, and its current characteristics are those of a public forum.").

35. On or about July 7, 2022, Fremont Street Experience applied for a Special Event Permit (#362490). *See* Special Event Permit 362490, attached hereto as **EXHIBIT 4**.

36. On or about July 12, 2022, Special Event Permit 362490 was approved. Ex. 4.

37. Special Event Permit 362490 specifically states that the "special event" will be for "Festivus." Ex. 4.

38. "Festivus" is not advertised on any Fremont Street Experience media or marketing materials.

39.     No physical signage on Fremont Street indicates any special event named "Festivus" is occurring.

40.     However, according to Special Event Permit 362490 and the restrictions implemented by Fremont Street Experience as described below, this "special event" takes place every Friday, Saturday, and Sunday night from July 8, 2022, at 8:00 p.m. through November 28, 2022, at 5:00 a.m. Ex. 4, at 2-3.

41.     Moreover, Special Event Permit 362490 states "alcohol beverages are not authorized to be served at the event" and "Restricted access to 21+ on each event date."  Ex. 4, at

42.     Currently, the City of Las Vegas, through LVMC 10.54.010, already has a curfew in place for minors under the age of 18, "between the hours of ten p.m., *Sunday* through Thursday and five a.m. of the succeeding day, and between the hours of twelve midnight on Friday and Saturday and five a.m. of the succeeding day … On all school holidays and during the days of summer vacation, said curfew shall be between the hours of twelve midnight and five a.m. for all citizens under the age of eighteen years."

43.     Defendant Fremont Street Experience has erected and continues to display signs such as the following:



44.     In addition to signage, FSE erects barricades, checks identification, and employs the use of metal detectors before allowing pedestrians, no matter their purpose for being there, to enter the public forum. Ex. 4, at 4.

45.     The Las Vegas City Council proposed a bill that would have implemented a curfew on Fremont Street for those under 21, but on August 3, 2022, the Las Vegas City Council agenda did not approve that proposal.

46.     To date, neither the City of Las Vegas nor Fremont Street Experience have provided any data or rationale justifying their actions in banning adults under the age of 21 from Fremont Street during this time.

**B.     <u>FACTS SPECIFIC TO PLAINTIFF KELVIN GORDON</u>**

47.     Pursuant to LVMC 11.68.020, a person who, upon any surface designated as part of the Pedestrian Mall, engages in any form of performing art, including but not limited to posing, acting, dancing, or miming, whether in costume or not; the playing of any musical instrument, singing or vocalizing, with or without accompaniment, where the performing art is not provided by or on behalf of The Fremont Street Limited Liability Company is designated a "street performer" under the regulations imposed by LVMC Chapter 11.68.

48.     Mr. Gordon is registered with the City of Las Vegas as a "street performer" as defined by LVMC 11.68.020.

49.     Mr. Gordon has performed on the Fremont Street Pedestrian Mall for the last 11 years and will continue engaging in performances for the foreseeable future.

50.     While performing on the Fremont Street Pedestrian Mall, Mr. Gordon has experienced multiple contacts with FSE employees who have regulated his performances or seized his personal property.

51.     As part of his performance as a contortionist, Mr. Gordon uses a 40-pound metal box and a speaker.

52.     To transport these props, Mr. Gordon uses a collapsible metal dolly.

53.     The metal dolly complies with the provisions of LVMC Chapter 11.68 as it is collapsible and so (1) remains within a two-foot radius of Mr. Gordon as he performs and (2) fits entirely within his designated location when he is required to perform inside such a location under LVMC Chapter 11.68.

54.     FSE employees previously confiscated Mr. Gordon's dolly, claiming that the dolly violated LVMC Chapter 11.68, without citing any specific language that would justify this position.

55.     In Mr. Gordon's latest encounter with FSE employees, FSE informed Mr. Gordon that FSE would prohibit him from bringing dollies to transport equipment, such as a speaker or a performance prop.

56.     FSE would bar Mr. Gordon from using a dolly regardless of the size of the speaker or prop he used during his performance.

57.     Despite this equipment being fully contained within his designated location, Mr. Gordon's dolly was permanently confiscated by FSE security.

58.     Mr. Gordon has emailed the City of Las Vegas' city attorney to advise them of this situation, which Mr. Gordon believes is in violation of the Las Vegas Municipal Code which pertains to Fremont Street.

59.     Mr. Gordon was advised by the city attorney for the City of Las Vegas to review the Las Vegas Municipal Code.

60.     When Mr. Gordon reviewed the code, he found that the code is completely silent as to the use of a dolly.

61.     Additionally, FSE Security has threatened legal action against anyone who performs inside of a "closed" location designated for street performers, including Mr. Gordon, stating that the location closings are done at the request of the City.

62.     However, when Mr. Gordon attempted to view which locations were open via the City's website dedicated to the street performer registration, the City lists the supposedly "closed" locations as being available for performances.

63.     It is believed that FSE is closing locations designated for performances by "street performers" on the Fremont Street Pedestrian Mall without notifying the City.

64.     On many occasions Mr. Gordon has been required to turn off his speaker whenever FSE is performing its celestial vault light show.

65.     On many occasions, Mr. Gordon has been barred from performing in designated locations due to FSE's sponsored concerts.

66.     On December 31, 2021, and January 1, 2022, Mr. Gordon was barred from performing because no designated locations were made available by the City.

67.     Upon information and belief, no designated locations for artistic performances were made available by the City due to FSE closing the entire Fremont Street Pedestrian Mall to host a series of musical performances.

68.     While the Fremont Street Pedestrian Mall was closed to the general public from December 31, 2021, until January 1, 2022, FSE was permitted to charge individuals a fee to enter the traditional public forum.

69.     FSE engages in expressive activities on the Pedestrian Mall including advertising, concerts, and other artistic acts, and a regular presentation of its music and light show.

70.     FSE controls numerous large speakers that line the Fremont Street Pedestrian Mall.

71.     Through these speakers, FSE plays music at high volume nightly.

72.     FSE also has control over the canopy that runs the length of the Fremont Street Pedestrian Mall.

73.     On this canopy FSE performs a "celestial vault light show" to entertain visitors to the Fremont Street Pedestrian Mall.

74.     FSE regularly host concerts on the stages located on the Fremont Street Pedestrian Mall, which are advertised on FSE's website.

75.     Upon information and belief, FSE has never been required to stop engaging in expressive activity due to Mr. Gordon's or any other individual's expressive activities, including artistic performances.

76.     Upon information and belief, the City has never permitted any other private person besides FSE to close the Fremont Street Pedestrian Mall or charge a fee for entry onto the Fremont Street Pedestrian Mall.

77.     Currently, FSE security refuses to let Mr. Gordon to perform on Fremont Street after 9 p.m., on Friday, Saturday, or Sunday nights unless he provides photo identification.

**C.      FACTS SPECIFIC TO PLAINTIFFS LILITH MCGRATH AND KIANA FULLER**

78.     Lilith McGrath and Kiana Fullmore are both 18 years old.

79.     Ms. McGrath is a member of the ACLU of Nevada.

80.     On August 12, 2022, at 9:25 p.m., Ms. McGrath and Ms. Fullmore visited Fremont Street with plans to watch artistic performances by individuals designated as "street performers", take pictures and videos, and to walk the corridor together.

81.     After walking towards 4th Street and Fremont Street, both Ms. McGrath and Ms. Fullmore observed barricades and identification checkpoints, along with signage prohibiting those under 21 from entering.

82.     Upon attempting to enter the Fremont Street Pedestrian Mall, FSE security told both Ms. McGrath and Ms. Fullmore they could not enter because they were under the age of 21.

## VI.     LEGAL STANDARD

83.     The First Amendment of The Constitution of the United States specifically states:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

84.     The First Amendment is incorporated to the states through the incorporation doctrine of the first section of the Fourteenth Amendment:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

85.     42 U.S.C. §1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action

at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

86.    42 U.S.C. §1988(a) states:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

87.    Additionally, Article 1 Sections 9 and 10 of the Nevada Constitution state:

Sec: 9.   Liberty of speech and the press.   Every citizen may freely speak, write and publish his sentiments on all subjects being responsible for the abuse of that right; and *no law shall be passed to restrain or abridge the liberty of speech* or of the press. In all criminal prosecutions and civil actions for libels, the truth may be given in evidence to the Jury; and if it shall appear to the Jury that the matter charged as libelous is true and was published with good motives and for justifiable ends, the party shall be acquitted or exonerated.

Sec: 10.   Right to assemble and to petition.   The people shall have the right freely to assemble together to consult for the common good, to instruct their representatives and to petition the Legislature for redress of Grievances.

88. The United States Court of Appeals for the Ninth Circuit has held that Fremont Street is a traditional public forum. *Am. C.L. Union of Nevada,* 333 F.3d 1092 at 1106.

89. Due to Fremont Street's status as a traditional public forum, the government's right to limit expressive activity is sharply circumscribed and subject to the highest scrutiny. *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784, 791 (9th Cir. 2006).

90. "The government bears 'an extraordinarily heavy burden' when it seeks to regulate free speech in a traditional public forum." *Id.*, *citing A.C.L.U. I,* 333 F.3d at 1098.

91. The government may place reasonable time, place, and manner restrictions on speech. *Id.* at 792.

92. However, these restrictions must be justified without reference to the protected speech's content. *Id*.

93. They must be content-neutral and narrowly tailored to serve a significant government interest, leaving open ample alternative channels of expression. *Id*.

94. "The failure to satisfy any single prong of this test invalidates the requirement." *Id*.

95. "A content-based regulation, on the other hand, is 'presumptively unconstitutional, and subject to strict scrutiny.'" *Id*.

96. "Content-based regulations pass constitutional muster only if they are the least restrictive means to further a compelling interest." *Id*.

97. "The commercial marketplace, like other spheres of our social and cultural life, provides a forum where ideas and information flourish. Some of the ideas and information are vital, some of slight worth. But the general rule is that the speaker and the audience, not the government, assess the value of the information presented. Thus, even a communication that does no more than propose a commercial transaction is entitled to the coverage of the First Amendment.

*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 503–04 (1996) (citing *Edenfield v. Fane*, 507 U.S. 761 (1993), *referencing Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976)).

## VII.     CLAIMS FOR RELIEF

98. Plaintiffs incorporate paragraphs 1 – 97 as though fully set forth herein.

**A.    FIRST CAUSE OF ACTION PURSUANT TO U.S.C. § 1983, FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION – DEFENDANT, THE CITY OF LAS VEGAS, THROUGH LVMC 11.68, HAS VIOLATED THE FIRST AMENDMENT BY FAVORING ONE SPEAKER OVER ALL OTHERS IN A TRADITIONAL PUBLIC FORUM.**

99.     "In the realm of private speech or expression, government regulation may not favor one speaker over another." *Rosenberger*, 515 at 828, *cited by Perry,* 121 F.3d at 1371.

100.     Regulations that limit protected expressive activity but offer exemptions from regulation based on who engages in the expressive activity violate the First Amendment. *Perry*, 121 F.3d at 1371–72.

101.     Speech restrictions based on the identity of the speaker are all too often simply a means to control content. *Citizens United v. Federal Election Comm'n*, 558 U.S. 310 at 340. (2010).

102.     Regulations that favor commercial speech over artistic and expressive speech are invalid under the First Amendment. *Berger*, 569 F.3d at 1055.

103.     Through the regulations imposed on expressive activity pursuant to Las Vegas Municipal Code 11.68, the City has violated the First Amendment by (1) exempting FSE from regulations governing expressive activity, (2) explicitly favoring the commercial and expressive activity of FSE over the expressive activity of other individuals on the Fremont Street Pedestrian

Mall and (3) empowering FSE to affirmatively regulate expressive activity on the Fremont Street Pedestrian Mall while allowing FSE to engage in its own expressive activities in that forum.

### 1. *LVMC 11.68 violates the First Amendment by exempting FSE from regulations limiting expressive activities on Fremont Street Pedestrian Mall.*

104.    LVMC 11.68 explicitly regulates expressive activities protected by the First Amendment on the Fremont Street Pedestrian Mall, including but not limited to solicitation, demonstrations, speech, proselytizing, leafleting, distribution of message-bearing merchandise, parades, and performing arts. LVMC 11.68.100(A)(1); LVMC 11.68.103; LVMC 11.68.105; LVMC 11.68.107; LVMC 11.68.108.

105.    For the purposes of LVMC Chapter 11.68, LVMC 11.68.020 designates any "person who, upon any surface designated as part of the Pedestrian Mall, engages in any form of performing art" a "street performer" under the ordinance, unless the performing art is "provided by or on behalf of The Fremont Street Limited Liability Company."

106.    According to LVMC 11.68.020, "performing arts" include "but are not limited to posing, acting, dancing or miming, whether in costume or not; the playing of any musical instrument, singing or vocalizing, with or without accompaniment."

107.    Performances, and specifically "street performances", in traditional public forums are "protected under the First Amendment as expressive activity." *Santopietro v. Howell*, 857 F.3d 980, 987 (9th Cir. 2017).

108.    However, under LVMC 11.68.107 and LVMC 11.68.108, any performance by a person designated a "street performer" on the Fremont Street Pedestrian Mall is subject to extensive regulations and restrictions.

109.    Under LVMC 11.68.107, a person designated as a "street performer" must comply with the following requirements:

- Not charge a fee for their performance; LVMC 11.68.107(B)

- Not interfere with any performances provided by or on behalf of FSE; LVMC 11.68.107(C)

- Not perform within specified distances from ATMs, retail kiosks or carts, outer perimeters of outdoor dining areas while the areas are being used for dining, fire lanes and crosswalks, other street performers who are performing; LVMC 11.68.107(C)(2)

- Not perform within any area closed the public, which explicitly includes "a closed stage provided by the Fremont Street Limited Liability Company"; LVMC 11.68.107(C)(2)(e)

- Not perform in any location "that will obstruct or impede pedestrian traffic"; LVMC 11.68.107(C)(2)(h)

- Not place any objects on the ground unless the objects are within two feet of the performer, does not obstruct or impeded pedestrian traffic or "cause potential risk to passerby" and are "integral to the performance"; LVMC 11.68.107(C)(4)

- Only emit sound that is "an integral part of the performance"; LVMC 11.68.107(C)(5)(a)

- Not admit sound that is above "maximum noise levels" designated by ordinance; LVMC 11.68.107(C)(5)(b)

- Not admit sound during "the actual performance or operation of the celestial vault light show, or during any special event when the Pedestrian Mall is closed to the general public except upon payment of admission charge"; LVMC 11.68.107(C)(5)(c)

- Not admit sound within one hundred feet within of "any concert that is provided by or on behalf of The Fremont Street Limited Liability Company"; LVMC 11.68.107(C)(d).

110.    Under LVMC 11.68.107(C)(3), a person designated as a "street performer" may only engage in performing arts in "designated locations" as defined by during the ordinance's "specified time frame", which is "three p.m. on any particular day and one a.m. the following morning." LVMC 11.68.020 (defining "specific time frame").

111.    Such locations are designated according to a lottery officiated by the City of Las Vegas.

112.    If there is a designated location, such locations are only open on a "first come, first serve" basis.

113.    A street performer is limited to performing within a particular circle for two hours, after which the performer may no longer stay in the designated location.

114.    As FSE is explicitly excluded from the definition of "street performer" provided by LVMC 11.68.020 even if engaging in a "form of performing art" on a "surface designated as part of the Pedestrian Mall", it is not required to comply with any of the requirements of LVMC 11.68.107.

115.    Furthermore, under LVMC 11.68.115, any person who is designated a "street performer" but receives compensation from the Fremont Street Liability Company is explicitly exempt from the regulations imposed by LVMC 11.68.107 except for:

- Section 11.68.107(C)(2), except for Subparagraph (e) thereof;
- Section 11.68.107(C)(4); and
- Section 11.68.107(C)(5).

116.    Individuals who satisfy the requirements of LVMC 11.68.115 are not required to perform in designated locations and are not dependent on the City's lottery in receiving such a location.

117.    Beyond performances, FSE's other First Amendment activities, including commercial speech promoting its business activity, are not required to comply with any of the regulations imposed on solicitation or expressive activity by LVMC 11.68.103 or LVMC 11.68.105. *See* Notice to all Businesses, attached hereto as **EXHIBIT 5**.

118.     Mr. Gordon is an individual who engages in performing arts on the Fremont Street Pedestrian Mall and is designated as a "street performer" by LVMC 11.68.020.

119.     As a designated "street performer", Mr. Gordon is required to comply with the regulations set forth in LVMC 11.68.107 and LVMC 11.68.108.

120.     As a designated "street performer", Mr. Gordon has been required to perform only in designated locations on the Fremont Street Pedestrian Mall between 3 p.m. and 1 a.m.

121.     As a designated "street performer", Mr. Gordon is barred from charging a fee for his performances.

122.     As part of his performance, Mr. Gordon uses a speaker system to play music while he performs. For this reason, he is barred from performing within 100 feet of FSE-sponsored concerts and must comply with the speaker volume requirements.

123.     The ACLU of Nevada, as a non-profit organization, has previously solicited donations on the Fremont Street Pedestrian Mall, and so must comply with the requirements of LVMC 11.68.107.

124.     LVMC Chapter 11.68 violates the First Amendment by exempting FSE from the regulations imposed by LVMC 11.68.103, LVMC 11.68.105, LVMC 11.107, and LVMC 11.108.

125.     Furthermore, LVMC Chapter 11.68 violates the First Amendment by failing to impose similar restrictions as LVMC 11.68.103, LVMC 11.68.105, LVMC 11.107, LVMC 11.108 on FSE's commercial speech on the Fremont Street Pedestrian Mall, as FSE is not bound by similar requirements when advertising its businesses or permitting other businesses to sell their wares on the Fremont Street Pedestrian Mall.

126.     This lack of regulation inherently favors commercial speech over artistic and political speech.

### 2. *LVMC 11.68 violates the First Amendment by explicitly favoring the expressive activities and speech of FSE over the expressive activities of other individuals on the Fremont Street Pedestrian Mall.*

127.    LVMC Chapter 11.68 explicitly favors FSE's speech over other individuals on the Fremont Street Pedestrian under multiple circumstances.

128.    Under LVMC 11.68.105(C)(2)(f), a street performer may not perform within one hundred feet of the stage where FSE is sponsoring a concert, where FSE has no obligation to avoid performing within one hundred feet of an ongoing street performance.

129.    Under LVMC 11.68.105(C)(5)(c), a street performer is obligated not to use amplified sound during FSE's celestial vault lightshow, where FSE has no obligation to avoid having the celestial vault lightshow interfere with ongoing performances.

130.    LVMC 11.68.107(d) bars street performers from using "amplified sound permitted during any concert that is provided by or on behalf of The Fremont Street Limited Liability Company unless each source of the amplified sound is at least one hundred feet from the stage on which the concert takes place", but there is no reciprocal obligation imposed on FSE.

131.    Under each of these circumstances, every other speaker or performer on the Fremont Street Pedestrian Mall must give way to FSE's expressive activity.

132.    Under no circumstances are other speakers' or performers' expressive activities favored over those of FSE.

133.    Mr. Gordon has been previously prevented from performing on the Fremont Street Pedestrian Mall due to FSE sponsored concerts.

134.    Mr. Gordon has been required to stop his performances due to FSE performing its celestial vault lightshow.

135.   Under LVMC 11.68.070(g), FSE is the sole private actor with the authority to close the Fremont Street Pedestrian Mall to the general public, and after closure, FSE may charge a fee to anyone seeking to enter the Pedestrian Mall.

136.   FSE uses this authority at times to charge the general public to attend musical performances that FSE hosts on the Fremont Street Pedestrian Mall.

137.   When FSE closes the Fremont Street Pedestrian Mall to the general public, street performers are barred from performing on the Pedestrian Mall pursuant to LVMC 11.68.107(C)(2)(e) and other individuals must pay to enter the Pedestrian Mall before engaging in either expressive activity or solicitation.

138.   On December 31, 2021, to January 1, 2022, FSE closed the Pedestrian Mall and charged the public to enter, a commercial activity.

139.   During that time, FSE hosted multiple musical performances.

140.   Mr. Gordon was barred from performing on the Fremont Street Pedestrian Mall due to FSE closing the area down for its commercial activities.

141.   LVMC 11.68 violates the First Amendment by directly favoring expressive activity by FSE over the other individuals on the Fremont Street Pedestrian Mall, a traditional public forum.

142.   LVMC 11.68 violates the First Amendment by directly favoring FSE's commercial activities over the artistic and political activities of other individuals in a traditional public forum.

///

///

### 3. *LVMC 11.68 violates the First Amendment by permitting FSE to regulate the expressive activities of other individuals on the Fremont Street Pedestrian Mall while allowing FSE to engage in express activities in that same forum.*

143.   LVMC 11.68 imbues FSE with the authority regulate protected First Amendment activity on the Fremont Street Pedestrian Mall although FSE engages in speech and other expressive activities on the Fremont Street.

144.   LVMC 11.68.060 authorizes FSE, subject to the other provisions of Chapter 11.68 and the "management agreement" between FSE and the City, to "determine the uses of the Pedestrian Mall for any purpose that will enhance the movement, safety, convenience, enjoyment, entertainment, recreation or relaxation of pedestrians, and other purposes necessary or appropriate to carry out the provisions of the Pedestrian Mall Act, including, without limitation, seating, merchandising, exhibiting, advertising and any other use, activity or special event which in the judgment of The Fremont Street Experience Limited Liability Company will accomplish any of those purposes."

145.   LVMC 11.68.070 explicitly grants FSE the "authority to control and regulate" activities that necessarily relate to First Amendment activity on the Fremont Street Pedestrian Mall, including:

- "The use of the Pedestrian Mall for advertising purposes and the charging of a fee in connection therewith"; LVMC 11.68.070(D)

- "The access to the Pedestrian Mall by the public and closure of the Pedestrian Mall to the public for purposes of special events or activities for limited periods of time"; LVMC 11.68.070(G)

- "Other activities, actions or conduct to promote the best interests of the public and carry out the provision of the Pedestrian Mall Act." LVMC 11.68.070(H).

146.   Furthermore, LVMC 11.68.105(E) authorizes FSE adjust the exact location of any "designated locations" that street performers must perform in from 3 p.m., to 1 a.m., daily.

147.   FSE also has the authority to close designated locations as long as "no fewer than twenty-five such locations are available at any given time." LVMC 11.68.105.

148.     Finally, pursuant to LVMC 11.68.140, FSE is authorized to "commence a civil action to enjoin any violation of the provisions contained in LVMC 11.68.100 to 11.68.108, inclusive." FSE is the only private party with this right to bring such a civil action.

149.     Pursuant to its authority under LVMC Chapter 11.68, FSE has unilaterally closed designated locations where Mr. Gordon would have otherwise performed though those locations had been deemed "open" on the City's website.

150.     Pursuant to its authority under LVMC 11.68.070(H), FSE, through its employees, has confiscated Mr. Gordon's personal property, specifically a dolly that he uses to move the speaker and prop he uses for his performance, claiming that the property was in violation of LVMC 11.68.107.

151.     Pursuant to its authority under LVMC 11.68.140, FSE, through its employees, has threatened to sue Mr. Gordon for alleged violations of LVMC 11.68.107 though Mr. Gordon always has and is currently in compliance with the ordinance.

152.     Pursuant to its authority under LVMC 11.68.070(G), FSE closed the Fremont Street Pedestrian Mall from December 31, 2021, to January 1, 2022, barring Mr. Gordon from engaging in protected First Amendment activity on the Fremont Street Pedestrian Mall so that FSE could charge the general public to enter into the public forum to observe artistic performances by musicians.

153.     LVMC Chapter 11.68 violates the First Amendment by authorizing a person, the Fremont Street Limited Liability Company, to regulate and limit the First Amendment activities of other individuals in a traditional public forum while also engaging in First Amendment activity in that same forum.

154.    LVMC Chapter 11.68 violates the First Amendment by authorizing FSE to engage in regulatory practices that favor FSE's commercial activities over the artistic and political speech of other individuals in a traditional public forum.

**B.  SECOND CAUSE OF ACTION PURSUANT TO U.S.C. § 1983 – DEFENDANTS, THE CITY OF LAS VEGAS AND FREMONT STREET EXPERIENCE, LLC (UNDER THE PUBLIC FUNCTION AND JOINT ACTION DOCTRINES) HAVE VIOLATED THE FIRST AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION BY PROHIBITING ADULTS UNDER THE AGE OF 21 FROM ENTERING THE FREMONT STREET PEDESTRIAN MALL EVERY FRIDAY, SATURDAY, AND SUNDAY FROM 9:00 P.M. UNTIL 5:00 A.M. FOR A NEARLY FIVE MONTH PERIOD BY FAILING TO SATISFY ANY LEVEL OF CONSTITUTIONAL SCRUTINY.**

155.    Despite Plaintiffs, Lilith McGrath and Kiana Fullmore, being 18 years old, they are being denied their First Amendment right to engage in, by either conducting or viewing, any and all expressive activity on Fremont Street, a traditional public forum, because they have not reached the drinking and gambling age set forth in our state.

156.    Minors, like adults, have a fundamental right to freedom of expression. *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 950 (9th Cir. 1997).

157.    Furthermore, it is unprecedented, other than in times of emergency, for a curfew to be imposed upon adults.

*1.  Fremont Street Experience, LLC is liable under the public function and joint action doctrines.*

158.    The Supreme Court has articulated four distinct tests for determining when the actions of a private individual amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test. *Collins v. Womancare*, 878 F.2d 1145, 1148-49 (9th Cir. 1989); *see also George v. Pacific-CSC Work Furlough,* 91 F.3d 1227, 1231 (9th Cir. 1996). *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997).

159.    The Supreme Court has held that conduct which qualifies as "state action" under the Fourteenth Amendment also satisfies section 1983's under color of state law requirement. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 & n. 18 (1982).

160.    "The Court left open the possibility, however, that it might take less to demonstrate action under color of state law than to demonstrate state action." *Id.*; *see Howerton v. Gabica*, 708 F.2d 380, 382 n. 5 (9th Cir. 1983); *Collins v. Womancare*, 878 F.2d 1145, 1148 (9th Cir. 1989).

161.    "Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *United States v. Price*, 383 U.S. 787, 794, 86 S. Ct. 1152, 1157 (1966).

162.    The public function test has been implemented as follows:

> Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State. These cases reflect a two-part approach to this question of "fair attribution." First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 2753 (1982).

163.    The public function test "treats private actors as state actors when they perform a task or exercise powers traditionally reserved to the government." *Ohno v. Yasuma*, 723 F.3d 984, 996 (9th Cir. 2013).

164.    "'Joint action' exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party, ... or otherwise

1  has 'so far insinuated itself into a position of interdependence with the non-governmental party

2  that it must be recognized as a joint participant in the challenged activity....'" *Ohno*, 723 F.3d at

3  996.

4  165.    Here, the Las Vegas Municipal Code through 11.68.060, 11.68, 070, and 11.68.100,

5  as well as the Amended and Restated Management Agreement Fremont Street Experience Project,

6  makes clear that Defendant, Fremont Street Experience, LLC, is a private party who is acting for

7  and on behalf of the City of Las Vegas.

8

9  166.    Additionally, with respect to the aforementioned Special Event Permit, the City of

10  Las Vegas authorized the permit, which specifically sets out that the five-month special event

11  approved via the permit is a "21+ event", lists each weekend from July 8, 2022, to November 28,

12  2022, and specifically states, "all equipment and bags are subject to search."

13  ***2.    Fremont Street Experience, as authorized by the City of Las Vegas, imposed an
14  unconstitutional curfew on minors and adults under the age of 21.***

15  167.    The City of Las Vegas, in Municipal Code 10.54.010, imposes a curfew for minors,

16  those under the age of 18.

17  168.    The area covered by this curfew is found in LVMC 10.54.015, and covers the

18  Fremont Street Pedestrian Mall.

19  169.    The current city-wide curfew hours for minors set forth in LVMC 10.54.010 are

20  from 10 p.m. to 5 a.m. Sunday through Thursday and midnight to 5 a.m. on Friday and Saturday.

21

22  170.    Fremont Street Experience, LLC, as authorized by the City of Las Vegas through

23  the Special Event Permit, has imposed a curfew on adults aged 18 to 21.

24

25

26

27

171. Curfews are traditionally held to a strict scrutiny standard and are usually only imposed against adults in emergency situations.[9]

172. Here, there is no emergency situation that justifies a curfew imposed upon adults, impairing their ability to exercise their First Amendment rights on a public street.

173. Additionally, there is *no* data to support any claim that adults aged 18 to 21 pose an increased safety risk than those over the age of 21. Accordingly, Defendants' actions in imposing this curfew via an extended special event permit wouldn't even satisfy rational basis review because there is no relationship between the intrusive restriction effectuated and public safety.

174. Upon information and belief, FSE has made no effort to promote, advertise, or otherwise distinguish "Festivus" from the normal routine on the Fremont Street Pedestrian Mall besides imposing a curfew on adults attempting to access the traditional public forum, indicating that "Festivus" is not a "special event" but rather an excuse to impose a curfew on a public street.

175. Finally, there are no alternate channels to exercise their First Amendment rights during these time periods.

176. As such, the Friday, Saturday, and Sunday night bans on adults between the ages of 18-21 from entering the Fremont Street Pedestrian Mall should be found void and as unconstitutional.

## C.  DECLARATORY JUDGMENT

---

[9] "On review in this Court, the State, represented by the Office of the Attorney General, conceded in its answer brief and affirmatively maintained at oral argument that strict scrutiny should apply to the ordinance in question. We agree and hold in answer to the first certified question that strict scrutiny applies when reviewing a juvenile curfew ordinance." *T.M. v. State*, 784 So. 2d 442, 444 (Fla. 2001). *See also*, *Hodgkins v. Peterson*, IP 00-1410-C-T/G, 2000 U.S. Dist. LEXIS 20850, at *49 (S.D. Ind. Dec. 14, 2000). "In an effort to balance the often competing interests of parents, their children, and the City, the court believes that the most appropriate standard of review of the curfew ordinance is at the heightened level of review of intermediate scrutiny." *See Hutchins*, 188 F.3d at 541; *Schleifer*, 159 F.3d at 847.

177.   This Court, in a case of actual controversy within its jurisdiction, upon the filing of an appropriate pleading, has the power to declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. 28 U.S.C. § 2201.

178.   The facts stated above herein reveal a justiciable controversy in which a claim of right is asserted against one who has an interest in contesting it.

179.   The controversy is between persons whose interests are adverse.

180.   Plaintiffs have a legally protectable interest in the controversy.

181.   The issue involved in the controversy is ripe for determination as LVMC 11.68.070 and 11.68.100 are continuously being enforced.

182.   Additionally, FSE, since July 8, 2022, is enforcing an unconstitutional curfew against adults on Fremont Street, a traditional public forum.

183.   Thus, Plaintiffs seek an order declaring their rights with respect to the enforcement of LVMC 11.68.070, 11.68.100, and the Special Event Permit issued to FSE.

184.   As such, Plaintiffs are requesting that this Court issue an order declaring:

a.   The City of Las Vegas has violated the First Amendment by elevating the First Amendment rights of FSE over all individuals engaging in First Amendment activity on the Fremont Street Pedestrian Mall;

b.   To the extent that LVMC Chapter 11.68 exempts FSE or individuals compensated by FSE from regulations that limit or restrict activities protected by the First Amendment, including regulations governing solicitation, expressive activity, or performing arts, such exemptions violate the First

Amendment of the United States Constitution;

    c.   To the extent that LVMC Chapter 11.68 favors the speech, artistic performances, solicitations, or other expressive activities of FSE over the speech, artistic performances, solicitations, or other expressive activities of other individuals on the Fremont Street Pedestrian Mall, such provisions are the First Amendment of the United States Constitution;

    d.   To the extent that LVMC Chapter 11.68 regulates the speech, artistic performances, non-commercial solicitations, or other non-commercial expressive activities on the Fremont Street Pedestrian Mall more extensively than the commercial speech of FSE or any other party, such regulations are the First Amendment of the United States Constitution;

    e.   To the extent that LVMC Chapter 11.68 authorizes FSE to regulate the speech, artistic performances, solicitations, or other expressive activities on the Fremont Street Pedestrian Mall protected by the First Amendment while permitting FSE to engage in expressive activities and commercial speech, including but not limited to closing the Fremont Street Pedestrian Mall to the public and bringing civil action against other private individuals who violate LVMC Chapter 11.68, such provisions the First Amendment of the United States Constitution;

    f.   The Special Event Permit for "Festivus" granted by the City to FSE, to the extent it constitutes a curfew on adults between the ages of 18 to 21 and requires individuals to provide identification prior to engaging in activities protected by the First Amendment on the Fremont Street Pedestrian Mall,

violates the First Amendment of the United States Constitution; and

g. The City is not able to extend, and FSE is not able to enforce, the Special Event Permit to the extent it constitutes a curfew on adults between the ages of 18-20 and requires individuals to provide identification prior to engaging in activities protected by the First Amendment on the Fremont Street Pedestrian Mall without violating the First Amendment of the United States Constitution.

## D. INJUNCTIVE RELIEF

185. Injunctive relief is a historically equitable remedy.

186. This Court has jurisdiction to grant injunctive relief pursuant to FRCP 65 and 28 U.S.C. §2202 ("Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.")

187. As discussed above, Plaintiffs are entitled to relief regarding the free exercise of speech and expression on Fremont.

188. Allowing the City to continue favoring FSE over other speakers and allowing FSE to implement an unconstitutional curfew will cause irreparable injury to Plaintiffs by denying them, both as individual Plaintiffs and the ACLU of Nevada on behalf of its membership, their freedom of speech and expression, a right to which they are entitled as a matter of law.

189. The ACLU of Nevada requests injunctive relief to prevent the City from passing and enforcing ordinances that violate the First Amendment by elevating the rights of one private actor, FSE, over other individuals on the Fremont Street Pedestrian Mall and from issuing permits that allow FSE to impose unconstitutional curfews.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, KELVIN GORDON, LILITH MCGRATH, KIANA FULLMORE, and ACLU of Nevada, asks for the following relief:

A. All equitable declaratory relief and/or statutory declaratory relief that arises from or is implied by the facts, whether or not specifically requested, including but not limited to:

1. The City of Las Vegas has violated the First Amendment by elevating the First Amendment rights of FSE over all speakers in the space;

2. To the extent that LVMC Chapter 11.68 exempts FSE or individuals compensated by FSE from regulations that limit or restrict activities protected by the First Amendment, including regulations governing solicitation, expressive activity, or performing arts, such exemptions are void;

3. To the extent that LVMC Chapter 11.68 favors the speech, artistic performances, solicitations, or other expressive activities of FSE over the speech, artistic performances, solicitations, or other expressive activities of other individuals on the Fremont Street Pedestrian Mall, such provisions are void;

4. To the extent that LVMC Chapter 11.68 regulates the speech, artistic performances, non-commercial solicitations, or other non-commercial expressive activities on the Fremont Street Pedestrian Mall more extensively than the commercial speech of FSE or any other party, such regulations are void;

5. To the extent that LVMC Chapter 11.68 authorizes FSE to regulate the commercial and non-commercial speech, artistic performances, solicitations, or other expressive activities on the Fremont Street Pedestrian Mall protected by the First Amendment while permitting FSE to engage in expressive activities and commercial speech, including but not limited to closing the Fremont Street

Pedestrian Mall to the public and bringing a civil action against other private individuals who violate LVMC Chapter 11.68, such provisions are void.

6. The Special Event Permit for "Festivus" granted by the City to FSE, to the extent is constitutes a curfew on adults between the ages of 18-20 and requires individuals to provide identification prior to engaging in activities protected by the First Amendment on the Fremont Street Pedestrian Mall, is void.

7. The City is not able to extend, and FSE is not able to enforce, the Special Event Permit to the extent is constitutes a curfew on adults between the ages of 18-20 and requires individuals to provide identification prior to engaging in activities protected by the First Amendment on the Fremont Street Pedestrian Mall.

B. All other equitable injunctive relief that arises from or is implied by the facts, whether or not specifically requested, including an injunction against the City of Las Vegas from passing ordinances that violate the First Amendment, from elevating FSE over other speakers in the space, and from issuing permits that allow FSE to impose unconstitutional curfews;

C. Award Plaintiff its reasonable attorney's fees and costs incurred in this action as provided by 42 U.S.C. §1988(b); and

D. Such other and further relief as the court deems just and equitable.

Dated this 6 day of September 2022.

AMERICAN CIVIL LIBERTIES
UNION OF NEVADA
*/s/Christopher M. Peterson, Esq.*
CHRISTOPHER M. PETERSON, ESQ.
Nevada Bar No. 13932
SOPHIA A. ROMERO, ESQ.
Nevada Bar No. 12446

601 South Rancho Drive, Suite B-11
Las Vegas, NV 89106
Telephone: (702) 366-1226
Facsimile: (702) 366-1331
Email: peterson@aclunv.org
Email: romero@aclunv.org
*Attorneys for Plaintiffs*