CHRISTOPHER M. PETERSON, ESQ.
Nevada Bar No.: 13932
SOPHIA A. ROMERO, ESQ
Nevada Bar No.: 12446
**AMERICAN CIVIL LIBERTIES
UNION OF NEVADA**
601 South Rancho Drive, Suite B-11
Las Vegas, NV 89106
Telephone: (702) 366-1226
Facsimile: (702) 366-1331
Email: peterson@aclunv.org
Email: romero@aclunv.org
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KELVIN GORDON, an individual; LILITH MCGRATH, an individual; KIANA FULLMORE, an individual; and the AMERICAN CIVIL LIBERTIES UNION OF NEVADA FOUNDATION, a domestic nonprofit corporation, | Case No.: 2:22-cv-01446-RFB-EJY

MOTION FOR PRELIMINARY INJUNCTION |
| Plaintiffs, | |
| vs. | |
| THE CITY OF LAS VEGAS, a local municipal government entity; and FREMONT STREET EXPERIENCE, LLC, a domestic limited liability company; | |
| Defendants. | |

COMES NOW, by and through undersigned counsel, Plaintiffs KELVIN GORDON, LILITH MCGRATH, KIANA FULLMORE, and the AMERICAN CIVIL LIBERTIES UNION OF NEVADA ("ACLU of Nevada") (collectively referred to as "Plaintiffs"), to respectfully move this Court, pursuant to Fed. R. Civ. P. 65 and based upon the Verified Complaint and the Memorandum of Points and Authorities included herein, for issuance of a Preliminary Injunction (1) enjoining Defendants, THE CITY OF LAS VEGAS ("the City") and FREMONT STREET EXPERIENCE, LLC ("FSE"), from barring individuals under the age of 21 from entering the

Fremont Street Pedestrian Mall ("the Pedestrian Mall") pursuant to Special Event Permit 362490 issued by Defendant City of Las Vegas to FSE; and (2) enjoining the City from exempting FSE from regulations governing First Amendment activity on the Pedestrian Mall; (3) enjoining the City from enforcing provisions of LVMC 11.68 that favor FSE's First Amendment activities over the First Amendment activities of other individuals on the Pedestrian Mall; and (4) enjoining FSE from regulating the expressive activities, including performing arts, of individuals on the Fremont Street Pedestrian Mall, a traditional public forum where FSE is itself engaging in First Amendment activity.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The Plaintiffs seek a preliminary injunction because the Defendants have prohibited adults under the age of 21 via Special Event Permit 362490, including Plaintiffs McGrath and Fullmore, from entering the Pedestrian Mall, a public street and an established traditional public forum, in violation of those individuals' First Amendment rights. Defendants will suffer no injury if this curfew is enjoined because injunction would simply maintain the *status quo* that existed prior to July 8, 2022.

Emergency relief is also necessary to prevent the City of Las Vegas from favoring FSE's First Amendment activity over other individuals in a forum where FSE also participates as a speaker. Plaintiffs seek injunctive relief barring the City and FSE from behaving in a manner that will violate Plaintiffs' and the public's rights under the First Amendment. As these actions are ongoing, a preliminary injunction is necessary to allow Plaintiffs to litigate these claims before additional violations occur.

### II.   FACTUAL BACKGROUND

In 1993, the State of Nevada enacted the Pedestrian Mall Act, which is codified pursuant to NRS 268.810 through NRS 268.823. That same year, the City of Las Vegas designated five blocks of the downtown area as a Pedestrian Mall as codified in Las Vegas Municipal Code 11.68 et. seq. The City of Las Vegas thereafter designated FSE as the private operating entity "for

purposes of acquiring, constructing, improving, operating, managing and maintaining the Fremont Street Pedestrian Mall" via LVMC Ordinance No. 3747. *See* Compl. Ex. 2.

On or about July 7, 2022, FSE applied for a Special Event Permit, and on or about July 12, 2022, Special Event Permit 362490 was approved by the City of Las Vegas. The "special event" described in the permit was called "Festivus," though "Festivus" had not and has not been advertised in any Fremont Street Experience media or marketing materials and no physical signage on Fremont Street announced that a special event titled "Festivus" was or is occurring. However, according to Special Event Permit 362490 and the restrictions that have been implemented by Fremont Street Experience, this "special event" takes place every Friday, Saturday, and Sunday night from 8:00 p.m. through 5:00 a.m. starting July 8, 2022, and running through November 28, 2022. Moreover, Special Event Permit 362490 states "[r]estricted access to 21+ on each event date." *See* Compl. Ex. 4.

Since receiving this "special event" permit, Defendant FSE has erected and continues to display signs stating that you must be "21+ to enter with valid ID, Fri – Sun at 9 p.m". In addition to signage, FSE erects barricades, checks identification, and employs the use of metal detectors before allowing pedestrians, no matter their purpose for being there, to enter the public forum.[1] See Compl. at 15 – 16, and Ex. 4, at 4.

Additionally, FSE, a private entity, has and continues to engage in First Amendment activity on the Pedestrian Mall, including advertising its businesses, sponsoring concerts and other artistic acts, and regularly performing its music and light show known as the "celestial vault lightshow". The City also allows FSE to own a stage situated on the Pedestrian Mall to host FSE's concerts, and other individuals are not allowed to use that stage without FSE's permission. However, the Pedestrian Mall remains public property and has been designated a traditional public

---

[1] The Las Vegas City Council concurrently and publicly proposed a bill that would have implemented a curfew on Fremont Street for those under 21. However, when this proposal formally came before the Council on August 3, 2022, the Las Vegas City Council agenda did not approve that proposal, leaving unknowing patrons, including Plaintiffs, with the perception that no such curfew proposal would be in effect, particularly based on the City of Las Vegas' public statements suggesting an adult curfew was not going into effect. To date, neither the Defendants City of Las Vegas nor FSE have provided any data or rationale justifying their actions in banning adults under the age of 21 from Fremont Street during this time, and certainly no rationale satisfying strict scrutiny.

forum by the United States Court of Appeals for the Ninth Circuit. *Am. C.L. Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1106 (9th Cir. 2003).

### A.  Facts specific to Plaintiffs McGrath and Fullmore

Lilith McGrath and Kiana Fullmore are both 18 years old, and Plaintiff McGrath is a member of the ACLU of Nevada. On August 12, 2022, at 9:25 p.m., McGrath and Fullmore visited Fremont Street with plans to watch artistic performances by individuals designated as "street performers", take pictures and videos, and walk the corridor together. After walking towards 4th and Fremont Street, both McGrath and Fullmore observed barricades and identification checkpoints, along with signage prohibiting those under 21 from entering the Pedestrian Mall. Upon attempting to enter the Pedestrian Mall, FSE security informed both McGrath and Fullmore they could not enter the Pedestrian because McGrath and Fullmore were under the age of 21. *See* Compl. Ex. 1, at 5 and 7.

### B.  Facts specific to Plaintiff Gordon

Plaintiff Gordon is registered with the City of Las Vegas as a "street performer" as defined by LVMC 11.68.020 and has performed on the Fremont Street Pedestrian Mall for the last 11 years. Over that time, FSE has made multiple efforts to regulate Gordon's performance but in recent months the regulation has become much more burdensome.  As part of his performance as a contortionist, Gordon uses a 40-pound metal box and a speaker. To transport these props, Gordon uses a collapsible metal dolly. The metal dolly complies with the provisions of LVMC Chapter 11.68 in that the dolly (1) remains within a two-foot radius of Gordon as he performs and (2) fits entirely within his designated location when he is required to perform inside such a location under LVMC Chapter 11.68. Yet FSE employees have confronted Gordon multiple times over this dolly, claiming that the equipment violated LVMC Chapter 11.68, without citing any specific language that would justify this position. In Gordon's latest encounter with FSE employees, FSE informed Gordon that FSE would prohibit him from bringing dollies to transport equipment, such as a speaker or a performance prop, and would bar Gordon from using a dolly regardless of the size of the speaker or prop he used during his performance. Despite this equipment being fully contained

within his designated location, FSE security confiscated a dolly that belonged to Gordon, and Gordon has not been permitted to bring any other dollys on to the Pedestrian Mall to transport his equipment.

FSE's staff has closed performance spaces designated for street performers and threatened legal action against anyone who performs inside of a "closed" location, including Gordon. While the City's website dedicated to the street performer registration has listed certain locations as being available for performances, FSE continues to close these locations designated for performances by "street performers".

FSE controls large speakers that line the Pedestrian Mall.  Through these amplifiers, FSE plays music at high volume nightly. FSE also has control over the canopy that runs the length of the Pedestrian Mall. On this canopy, FSE performs a "celestial vault lightshow" to entertain visitors to the Fremont Street Pedestrian Mall. FSE regularly hosts concerts on the stages located on the Fremont Street Pedestrian Mall, which are advertised on FSE's website. In turn, Gordon has been required to turn off his speaker whenever FSE is performing its celestial vault light show. On other occasions, Gordon has been barred from performing in designated locations due to FSE's sponsored concerts. On December 31, 2021, and January 1, 2022, Mr. Gordon was barred from performing on the Pedestrian Mall as no designated locations were made available by the City due to FSE closing the Pedestrian Mall to host musical performances. While the Pedestrian Mall was closed to the general public from December 31, 2021, until January 1, 2022, FSE was permitted to charge individuals a fee to enter the traditional public forum. To Plaintiffs' knowledge, Defendant FSE has never been required to cease its performances, free or otherwise, to defer to any other actor's First Amendment rights. Defendant FSE now refuses to let Mr. Gordon perform on Fremont Street after 9 p.m., on Friday, Saturday, or Sunday nights unless he provides photo identification. *See* Compl. Ex. 1, at 2-4.

**C. Facts specific to Plaintiff American Civil Liberties Union of Nevada**

The ACLU of Nevada, a non-profit organization, has historically engaged in expressive activity on the Pedestrian Mall and must comply with the requirements imposed on First

Amendment activity under LVMC 11.68. It remains impacted by these requirements and has previously brought forth litigation surrounding the City of Las Vegas' regulations of Fremont Street. The ACLU of Nevada, including through its student chapter UNLV People Power comprised primarily of those between 18 and 21, has a membership inclusive of those impacted by the curfew restrictions addressed here. *See* Compl. Ex. 1, at 9.

## III.   <u>LEGAL STANDARD</u>

The standard for obtaining a temporary restraining order and preliminary injunction is the same. *Quiroga v. Chen*, 735 F. Supp. 2d 1226 (D. Nev. 2010). In considering whether to grant a temporary restraining order or a preliminary injunction pursuant to Fed. R. Civ. P. 65(a), a court must consider whether "(1) [the plaintiff] is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest." *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 668 (9th Cir. 2021). "When the government is a party, the last two factors (equities and public interest) merge." *Id.* "These factors are evaluated on a sliding scale." *Id.*

While traditionally actions under 42 U.S.C. § 1983 are filed against government actors, private parties may also be held liable under that provision under the "joint action" and "public function" doctrines. The Supreme Court of the United States has held that conduct that qualifies as "state action" under the Fourteenth Amendment also satisfies § 1983's under color of state law requirement. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n. 18 (1982). "The Court left open the possibility, however, that it might take less to demonstrate action under color of state law than to demonstrate state action." *Id.*; *see Howerton v. Gabica*, 708 F.2d 380, 382 n. 5 (9th Cir. 1983); *Collins v. Womancare*, 878 F.2d 1145, 1148 (9th Cir. 1989). Under the joint action doctrine, "[p]rivate persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute [. . .] [i]t is enough that he is a willful participant in joint activity with the State or its agents." *United States v. Price*, 383 U.S. 787, 794, 86 S. Ct. 1152, 1157 (1966). In the alternative, "[t]he public function test "treats private actors as state actors when they perform a task or exercise powers traditionally reserved to the government." *Ohno v. Yasuma*,

723 F.3d 984, 996 (9th Cir. 2013). The City, as a governmental entity, is liable for constitutional violations under 42 U.S.C. § 1983. While FSE is a private entity, it is also liable under 42 U.S.C. § 1983 pursuant to the "joint action" and "public function" doctrines.

## IV.   **LEGAL ARGUMENT**

As the United States Court of Appeals for the Ninth Circuit has previously declared: "[t]he Fremont Street Experience [Pedestrian Mall] is a traditional public forum: its public forum status was not destroyed by its transformation, and its current characteristics are those of a public forum." *Am. C.L. Union of Nevada*, 333 F.3d at 1106.  In that same matter, the Ninth Circuit recognized the fundamental problem now before this Court: "in our prior published opinion on Las Vegas's restrictions on free speech in the Fremont Street Experience, that 'as society becomes more insular in character, it becomes essential to protect public places where traditional modes of speech and forms of expression can take place. We think this is particularly true with respect to downtown public spaces conducive to expressive activities.'" *Id.* at 1097 (quoting *First Unitarian Church v. Salt Lake City Corp.*, 308 F.3d 1114, 1131 (10th Cir. 2002)) (alteration, citation, and internal quotation marks omitted). The Ninth Circuit observed that "if [the] trend of privatization [of public spaces] continues -- and we have no reason to doubt that it will -- citizens will find it increasingly difficult to exercise their First Amendment rights to free speech, as the fora where expressive activities are protected dwindle." *Id.* at 1097.  Since that decision, the "trend towards privatization" has reached new extremes, with Defendant FSE now explicitly dominating the forum with the Defendant City's consent. Plaintiffs now seek injunctive relief to ensure that their First Amendment rights are protected as this matter progresses.

The imposition of the curfew for individuals under the age of 21 violates the precedents of the Supreme Court of the United States and the Ninth Circuit related to accessing traditional public forums and the imposition of age-based curfews. More broadly, the Defendants' current actions with the City favoring Defendant FSE above all other speakers clearly and unambiguously violate Plaintiffs', and the general public's, rights under the First Amendment. The Plaintiffs are likely to succeed on the merits as the provisions of LVMC 11.68 that favor FSE necessarily violate the First

Amendment. *See Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995) (banning the government from favoring one private speaker over another); *Perry v. Los Angeles Police Dep't,* 121 F.3d 1365, 1371 (9th Cir. 1997) (exempting one category of speaker from restrictions on First Amendment activity imposed on all other speakers violates the First Amendment).  And as the prospective harm the Plaintiffs face is to their First Amendment rights, the harm is presumed to be irreparable. *Michel v. Bare*, 230 F. Supp. 2d 1147, 1159 (D. Nev. 2002).

Finally, the balancing of equities and public interest favors the Plaintiffs in that the injunction will not prevent the City from continuing regulating the Pedestrian Mall in a lawful manner nor will it prevent FSE from engaging in First Amendment activity as long as that activity is not prioritized over others in the forum.

FSE is liable in this matter under both the joint action and the public function doctrines. Pursuant to the joint action doctrine, the FSE has engaged with state officials, specifically the officials of the City, to restrict access to the Pedestrian Mall through Special Permit 362490 and more broadly regulate First Amendment activity on the Pedestrian Mall pursuant to the powers granted it by the City under LVMC 11.68. Pursuant to the public function doctrine, FSE is liable under 42 U.S.C. § 1983 because it performs "a task or exercise[s] powers traditionally reserved to the government": the regulation of First Amendment activities occurring in a traditional public forum.

As such, under the factors laid out in *East Bay Sanctuary Covenant*, the Court must grant the Plaintiffs' request for a preliminary injunction. 993 F.3d at 668.

**A.** **Defendants, the City of Las Vegas and FSE, should be enjoined from barring individuals under the age of 21 from entering the Pedestrian Mall pursuant to Special Event Permit 362490 issued by the City to FSE.**

The government bears "an extraordinarily heavy burden" when it seeks to regulate free speech in a traditional public forum. *Am. C.L. Union of Nevada*, 333 F.3d at 1098 (internal quotation marks omitted). "A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen

once more." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017). Denying an individual access to a traditional public forum violates the First Amendment unless that denial satisfies strict scrutiny. *Ark. Educ. Tv Comm'n v. Forbes*, 523 U.S. 666, 677, 118 S. Ct. 1633, 1641 (1998) ("The government can exclude a speaker from a traditional public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest.") (internal quotation omitted). Strict scrutiny "requires the Government to prove that [a] restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Sanders Cnty. Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 746 (9th Cir. 2012), *quoting Citizen United*, 130 S. Ct. at 882 (internal quotation omitted).

1. **The Plaintiffs are likely to succeed on the merits regarding Special Event Permit 362490 because the adult curfew authorized by the permit unlawfully restricts access to a traditional public forum without satisfying any level of scrutiny, much less strict scrutiny.**

The City approved FSE's request for a "Special Event Permit" on July 12, 2022, for "Festivus", an event neither marketed nor referenced by either party on any public-facing materials. Special Event Permit 362490 prohibits those under the age of 21 from entering the Pedestrian Mall between 8:00 p.m. and 5:00 p.m. every Friday, Saturday, and Sunday, from July 8, 2022, until November 27, 2022.  By imposing a curfew on those under 21 years old, Defendants' actions directly violate the Plaintiffs McGrath, Fullmore, and ACLU of Nevada's rights under the First Amendment.

Special Event Permit 362490 makes otherwise protected conduct impermissible in a substantial number of situations. This curfew prohibits 18 year-old adults, like Plaintiffs McGrath and Fullmore, from entering the Pedestrian Mall even when these Plaintiffs expressed interest in engaging in First Amendment activity, specifically viewing artistic performances and taking photographs. It also precludes ACLU of Nevada and its collegiate students and collegiate chapter, *UNLV People Power,* from engaging in protected First Amendment activity every Friday, Saturday, and Sunday evening without any basis for doing so. Under the existing curfew, all who fall between 18 and 21 years old are barred from engaging in all expressive activity, including

protected associative activity like protesting, which lies at the core of the First Amendment, within a public forum during arguably the busiest times of the week. In turn, the Defendants' restriction does not satisfy any level of scrutiny, let alone strict scrutiny, as this adult curfew is baseless. Plaintiffs McGrath and Fullmore, both adults, were denied access to the Pedestrian Mall solely because of the age-based curfew imposed via Special Event Permit 362490. The adult curfew imposed via this permit is a clear violation of the First Amendment, and Plaintiffs McGrath, Fullmore, and ACLU of Nevada are likely to succeed on the merits of this claim.

2. **Plaintiffs McGrath, Fullmore, and ACLU of Nevada are presumed to be irreparably harmed by the ongoing violation of their First Amendment rights.**

Irreparable harm is "harm for which there is no adequate legal remedy, such as an award for damages." *East Bay Sanctuary Covenant*, 993 F.3d at 677. Intangible injuries may qualify as irreparable harm because such injuries generally lack an adequate legal remedy. *Id.* (quotation omitted). In First Amendment cases, irreparable harm is presumed. *Bare*, 230 F. Supp. 2d at 1159. The loss of First Amendment freedoms, for even minimal periods of time, constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016). Here, the harm to the Plaintiffs is presumed to be irreparable as denying the Plaintiffs access to a traditional public forum violates the First amendment.

3. **The balance of equities favors the Plaintiffs as neither the City nor FSE will be harmed if preliminary injunction is granted, but Plaintiffs will suffer ongoing harm from the unconstitutional curfew.**

"When the government is a party, the last two factors (equities and public interest) merge." *Id.* "[V]indicating First Amendment freedoms is clearly in the public interest," *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005). "When a constitutional right hangs in the balance…'even a temporary loss' usually trumps any harm to the defendant." *Free the Nipple*, 916 F.3d at 806. Moreover, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Verlo*, 820 F.3d at 1127. In particular, "[v]indicating First Amendment freedoms is clearly in the public interest," *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221,

1237 (10th Cir. 2005).  Here, the balance of equities tips in Plaintiffs' favor and an injunction is in the public interest because the imposed curfew continues to preclude otherwise lawful expressive activity.  The City and FSE have other options to regulate the Pedestrian Mall without imposing a blanket ban on those under the age of 21 from entering into the forum. Allowing this curfew to continue forward will substantially impair Plaintiffs, and other members of the public's, ability to exercise their basic First Amendment rights.

**B.    Defendants, the City of Las Vegas and FSE, should be enjoined from regulating the expressive activities, including performing arts, of individuals on the Fremont Street Pedestrian Mall, a traditional public forum, where FSE is itself engaging in First Amendment activity.**

"Speech restrictions based on the identity of the speaker are all too often simply a means to control content." *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 340 (2010). "In the realm of private speech or expression, government regulation may not favor one speaker over another." *Rosenberger*, 515 U.S. at 828, *cited by Perry,* 121 F.3d at 1371. Regulations that limit protected expressive activity but offer exemptions from regulation based on who engages in the expressive activity violate the First Amendment. *Perry*, 121 F.3d at 1371–72. Additionally, regulations that favor commercial speech over artistic and expressive speech are invalid under the First Amendment. *Berger v. City of Seattle*, 569 F.3d 1029, 1055 (9th Cir. 2009).

**1.    The Plaintiffs are likely to succeed on the merits as the Defendants' actions within the Pedestrian Mall, a traditional public forum, violate the First Amendment by unconstitutionally creating preferential treatment for one private actor, Defendant FSE, versus other actors within the forum.**

FSE engages in First Amendment activity on the Pedestrian Mall, including advertising, sponsoring concerts, playing music, and regularly performing a "celestial vault lightshow". *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566 (recognizing commercial speech, and specifically advertising, as First Amendment activity); *Cinevision Corp. v. Burbank*, 745 F.2d 560, 568 (9th Cir. 1984) (finding that the musical performances and the promotion of those performances are First Amendment activities). Through the regulations imposed on expressive activity by LVMC Chapter 11.68, the City has violated *Rosenberger*, and by extension the First Amendment, by (1)

exempting FSE from regulations governing expressive activity; (2) explicitly favoring the commercial and expressive activity of FSE over the expressive activity of other individuals on the Pedestrian Mall; and (3) empowering FSE to affirmatively regulate expressive activity on the Pedestrian Mall even as FSE to engages in First Amendment activities in that forum.

> **a. LVMC 11.68 violates the First Amendment by exempting FSE from regulations limiting expressive activities on Fremont Street Pedestrian Mall.**

LVMC 11.68 explicitly regulates expressive activities protected by the First Amendment on the Pedestrian Mall, activities that include but are not limited to solicitation, demonstrations, speech, proselytizing, leafleting, distribution of message-bearing merchandise, parades, and performing arts. LVMC 11.68.100(A)(1); LVMC 11.68.100(B); LVMC 11.68.103; LVMC 11.68.105; LVMC 11.68.107; LVMC 11.68.108. For the purposes of LVMC Chapter 11.68, LVMC 11.68.020 also designates any "person who, upon any surface designated as part of the Pedestrian Mall, engages in any form of performing art" a "street performer" under the ordinance, unless the performing art is "provided by or on behalf of The Fremont Street Limited Liability Company." According to LVMC 11.68.020, "performing arts" include "but are not limited to posing, acting, dancing or miming, whether in costume or not; the playing of any musical instrument, singing or vocalizing, with or without accompaniment."

Performances, and specifically "street performances", in traditional public forums are "protected under the First Amendment as expressive activity." *Santopietro v. Howell*, 857 F.3d 980, 987 (9th Cir. 2017). However, under LVMC 11.68.107 and LVMC 11.68.108, any performance by a person designated a "street performer" on the Pedestrian Mall is subject to extensive regulations and restrictions. Under LVMC 11.68.107, a person designated as a "street performer" must:

- Not charge a fee for their performance; LVMC 11.68.107(B)

- Not interfere with any performances provided by or on behalf of FSE; LVMC 11.68.107(C)

- Not perform within specified distances from ATMs, retail kiosks or carts, outer perimeters of outdoor dining areas while the areas are being used for dining, fire lanes and crosswalks, other street performers who are performing; LVMC 11.68.107(C)(2)

- Not perform within any area closed the public, which explicitly includes "a closed stage provided by the Fremont Street Limited Liability Company"; LVMC 11.68.107(C)(2)(e)

- Not perform in any location "that will obstruct or impede pedestrian traffic"; LVMC 11.68.107(C)(2)(h)

- Not place any objects on the ground unless the objects are within two feet of the performer, does not obstruct or impeded pedestrian traffic or "cause potential risk to passerby" and are "integral to the performance"; LVMC 11.68.107(C)(4)

- Only emit sound that is "an integral part of the performance"; LVMC 11.68.107(C)(5)(a)

- Not admit sound that is above "maximum noise levels" designated by ordinance; LVMC 11.68.107(C)(5)(b)

- Not admit sound during "the actual performance or operation of the celestial vault light show, or during any special event when the Pedestrian Mall is closed to the general public except upon payment of admission charge"; LVMC 11.68.107(C)(5)(c)

- Not admit sound within one hundred feet of "any concert that is provided by or on behalf of The Fremont Street Limited Liability Company"; LVMC 11.68.107(C)(d).

Furthermore, under LVMC 11.68.107(C)(3), a person designated as a "street performer" may only engage in performing arts in "designated locations" as defined by during the ordinance's "specified time frame", which is "three p.m. on any particular day and one a.m. the following morning." LVMC 11.68.020 (defining "specific time frame"). Such locations are designated according to a lottery officiated by the City of Las Vegas, though under law FSE also has the authority to manage the lottery. If there is a designated location that is not claimed during the lottery, such locations are only open on a "first come, first serve" basis. A street performer is limited to performing within a designated location for two hours, after which the performer may no longer stay in that location.

　　　As FSE is explicitly excluded from the definition of "street performer" provided by LVMC 11.68.020 even if engaging in a "form of performing art" on a "surface designated as part of the Pedestrian Mall", it is not required to comply with any of the requirements of LVMC 11.68.107.

Additionally, under LVMC 11.68.115, any person who is designated a "street performer" but receives compensation from FSE is explicitly exempt from the regulations imposed by LVMC 11.68.107 with minor exceptions.[2] Individuals who satisfy the requirements of LVMC 11.68.115 are not required to perform in designated locations and are not dependent on the City's lottery in receiving such a location. Beyond performances, FSE's other First Amendment activities, including commercial speech promoting its business activity, are not required to comply with the regulations imposed on expressive activity by LVMC 11.68.103 or LVMC 11.68.105, let alone the restrictions imposed on "performing arts" under LVMC 11.68.107 and LVMC 11.68.108.

As a designated "street performer", Plaintiff Gordon is required to comply with the regulations set forth in LVMC 11.68.107 and LVMC 11.68.108, and has been required to perform only in designated locations on the Fremont Street Pedestrian Mall between 3 p.m. and 1 a.m. Unlike FSE, he is barred from charging a fee for his performances. Finally, as part of his performance, Mr. Gordon uses a speaker system to play music while he performs. For this reason, he is barred from performing within 100 feet of FSE-sponsored concerts and must comply with the speaker volume requirements. In turn, Plaintiff ACLU of Nevada is required to comply with LVMC 11.68.103 when engaging in solicitation and LVMC 11.68.108 when engaging in other forms of expressive activity such as public outreach.

LVMC Chapter 11.68 violates the First Amendment by exempting FSE from the regulations imposed by LVMC 11.68.100(B), LVMC 11.68.103, LVMC 11.68.105, LVMC 11.68.107, and LVMC 11.68.108 as well as by failing to impose similar restrictions as the above mentioned provisions on FSE's commercial speech on the Pedestrian Mall. As FSE is not bound by similar requirements when advertising its businesses or permitting other businesses to sell their wares on the Pedestrian Mall, this lack of regulation inherently favors commercial speech, specifically the commercial speech of FSE, over core First Amendment activity.

---

[2] *See* 11.68.107(C)(2), except for Subparagraph (e) thereof, 11.68.107(C)(4), and 11.68.107(C)(5).

**b. LVMC 11.68 violates the First Amendment by explicitly favoring the expressive activities and speech of FSE over the expressive activities of other individuals on the Fremont Street Pedestrian Mall.**

In addition to exempting FSE from regulation, LVMC Chapter 11.68 explicitly favors FSE's speech over other individuals on the Fremont Street Pedestrian under multiple circumstances where FSE's interest conflicts with other individuals:

- Under LVMC 11.68.105(C)(2)(f), a street performer may not perform within 100 feet of the stage where FSE is sponsoring a concert, where FSE has no obligation to avoid performing within 100 feet of an ongoing performance by a street performer.

- Under LVMC 11.68.105(C)(5)(c), a street performer is obligated not to use amplified sound during FSE's celestial vault lightshow, where FSE has no obligation to avoid having the celestial vault lightshow interfere with ongoing performances.

- LVMC 11.68.107(d) bars street performers from using amplified sound "during any concert that is provided by or on behalf of The Fremont Street Limited Liability Company unless each source of the amplified sound is at least one hundred feet from the stage on which the concert takes place", but there is no reciprocal obligation imposed on FSE.

Under each of these circumstances, every other speaker or performer on the Fremont Street Pedestrian Mall must give way to FSE's expressive activity, and under no circumstances are other speakers' or performers' expressive activities favored over those of FSE. For example, Mr. Gordon has been previously prevented from performing on the Pedestrian Mall due to FSE sponsored concerts, and he has been required to stop his performances due to FSE performing its celestial vault lightshow.

Perhaps more egregiously, under LVMC 11.68.070(g), FSE is the sole private actor with the authority to close the Fremont Street Pedestrian Mall to the general public and after closure charge anyone seeking to enter the Pedestrian Mall. FSE uses this authority at times to charge the general public to attend musical performances that FSE hosts. However, when FSE closes the Pedestrian Mall to the general public, street performers are barred from performing on the Pedestrian Mall pursuant to LVMC 11.68.107(C)(2)(e) and other individuals must pay to enter the Pedestrian Mall before engaging in or viewing either expressive activity or solicitation. To offer a

concrete example, from December 31, 2021, to January 1, 2022, FSE closed the Pedestrian Mall and charged the public to enter, a commercial activity. During that time, FSE hosted multiple musical performances, an expressive activity. Mr. Gordon was barred from performing on the Fremont Street Pedestrian Mall due to FSE closing the area down for these commercial activities.

LVMC 11.68 violates the First Amendment by directly favoring FSE's First Amendment activities, including commercial speech, over the First Amendment activities of other actors on the Pedestrian Mall.

**c. LVMC 11.68 violates the First Amendment by permitting FSE to regulate the expressive activities of other individuals on the Fremont Street Pedestrian Mall while allowing FSE to engage in express activities in that same forum.**

LVMC 11.68 authorizes FSE to regulate protected First Amendment activity on the Pedestrian Mall although FSE engages in speech and other expressive activities in the forum. Generally, LVMC 11.68.060 authorizes FSE, subject to the other provisions of Chapter 11.68 and the "management agreement" between FSE and the City, to:

> …determine the uses of the Pedestrian Mall for any purpose that will enhance the movement, safety, convenience, enjoyment, entertainment, recreation or relaxation of pedestrians, and other purposes necessary or appropriate to carry out the provisions of the Pedestrian Mall Act, including, without limitation, seating, merchandising, exhibiting, advertising and any other use, activity or special event which in the judgment of The Fremont Street Experience Limited Liability Company will accomplish any of those purposes.

LVMC 11.68.070 explicitly grants FSE the "authority to control and regulate" activities that necessarily relate to First Amendment activity on the Fremont Street Pedestrian Mall, including:

- "The use of the Pedestrian Mall for advertising purposes and the charging of a fee in connection therewith"; LVMC 11.68.070(D)

- "The access to the Pedestrian Mall by the public and closure of the Pedestrian Mall to the public for purposes of special events or activities for limited periods of time"; LVMC 11.68.070(G)

- "Other activities, actions or conduct to promote the best interests of the public and carry out the provision of the Pedestrian Mall Act." LVMC 11.68.070(H).

LVMC 11.68.100(B) authorizes FSE to determine whether activities related to the First Amendment may occur on the Pedestrian Mall, including "special events" that are allegedly centered on First Amendment activity like "Festivus" and the use of amplified sound under circumstances that do not involve performing arts. LVMC 11.68.105(E) authorizes FSE adjust the exact location of any "designated locations" that street performers must perform in from 3 p.m., to 1 a.m., daily. LVMC 11.68.105 grants FSE the authority to close locations designated for street performances as long as "no fewer than twenty-five such locations are available at any given time." Finally, pursuant to LVMC 11.68.140, FSE is the sole private party authorized to "commence a civil action to enjoin any violation of the provisions contained in LVMC 11.68.100 to 11.68.108, inclusive," which includes LVMC 11.68.100, LVMC 11.68.103, LVMC 11.68.105, LVMC 11.68.107, and LVMC 11.68.108, all provisions that explicitly regulate First Amendment activity.

Pursuant to its authority under LVMC Chapter 11.68, FSE has unilaterally closed designated locations where Plaintiff Gordon would have otherwise performed though those locations had been deemed "open" on the City's website. Pursuant to its authority under LVMC 11.68.070(H), FSE, through its employees, has confiscated Gordon's personal property, specifically a dolly that he uses to move the speaker and prop he uses for his performance, claiming that the property was in violation of LVMC 11.68.107. Pursuant to its authority under LVMC 11.68.140, FSE, through its employees, has threatened to sue Gordon for alleged violations of LVMC 11.68.107 though Gordon always has and is currently in compliance with the ordinance. Pursuant to its authority under LVMC 11.68.070(G), FSE closed the Fremont Street Pedestrian Mall from December 31, 2021, to January 1, 2022, barring Gordon from engaging in protected First Amendment activity on the Pedestrian Mall so that FSE could charge the general public to enter into the public forum.

LVMC Chapter 11.68 violates the First Amendment by authorizing a private entity, FSE, to regulate and limit the First Amendment activities of other individuals in a traditional public forum while also engaging in First Amendment activity in that same forum. It also violates the First Amendment by authorizing FSE to engage in regulatory practices that favor FSE's

commercial activities over the artistic and political speech of other individuals in a traditional public forum. As such, Plaintiffs are likely to succeed on the merits.

**2. The Plaintiffs are presumed to be irreparably harmed by the ongoing violation of their First Amendment rights.**

Irreparable harm is "harm for which there is no adequate legal remedy, such as an award for damages." *East Bay Sanctuary Covenant*, 993 F.3d at 677. Intangible injuries may qualify as irreparable harm because such injuries generally lack an adequate legal remedy. *Id.* (quotation omitted). In First Amendment cases, irreparable harm is presumed. *Bare*, 230 F. Supp. 2d at 1159. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. *Elrod*, 427 U.S. at 373; *Verlo*, 820 F.3d at 1127.

Here, all harms alleged pursuant to the First Amendment, meaning that irreparable harm is presumed. Furthermore, these harms are ongoing. Plaintiff Gordon's First Amendment activities on the Pedestrian Mall continue to be regulated by an entity that is also engaging in competing First Amendment activities in the forum. The City continues to favor FSE's First Amendment activities over other individuals performing in the space, including Gordon. The City continues to exempt FSE from regulations that govern First Amendment activity on the Pedestrian Mall, regulations that Gordon must comply with.

**3. The balance of equities favors the Plaintiffs: if preliminary injunction relief is issued, the City will retain its authority to regulate the public forum and FSE may continue to engage in First Amendment activity subject to the same regulations as all other individuals in the forum.**

Here too, the balance of equities tips in Plaintiffs' favor. As discussed above, FSE's favored status in a traditional public forum violates the Plaintiffs' First Amendment rights. By comparison, imposing the requested injunction does not implicate the FSE's constitutional rights and leaves the City with ample, lawful means to regulate the Pedestrian Mall.

If FSE is barred from regulating First Amendment activity on the Pedestrian Mall by threatening legal action against perceived violators of Las Vegas's First Amendment related regulations, closing designated performing spots, and shutting down the entire public forum for its

pecuniary gain, the City, as the government, still has the authority to regulate the Pedestrian Mall. Of course, the City would be required to regulate FSE's and its employees' First Amendment activities in the same manner as any other individual in the forum and could not prioritize commercial speech over core First Amendment activity, but content-neutral time, place, and manner restrictions that satisfy First Amendment scrutiny would still be applicable.

Requiring FSE to comply with the same regulations imposed on the First Amendment activities of all other individuals on the Pedestrian Mall would not unconstitutionally limit FSE's First Amendment rights, assuming that the City's current regulations are valid time, place, and manner restrictions. Preventing the City from favoring FSE's First Amendment activities over others would not bar FSE from engaging in lawful First Amendment activity.

The First Amendment harms here have a broader impact beyond the Plaintiffs. Many other individuals perform as "street performers" and engage in First Amendment activity on the Pedestrian Mall besides the Plaintiffs, as the very existence of the City's extensive regulation of First Amendment activity on the Pedestrian Mall affirms. All of these individuals suffer the same harm as Plaintiffs: the City favoring FSE's speech over all others in the forum; the regulation of their First Amendment activity by FSE though FSE has its own, private interests at stake in the forum; and the regulation of their First Amendment activity by the City that FSE alone is exempted from.

The remainder of this page is intentionally left blank.

1

## V.   **CONCLUSION**

2        Due to the clear First Amendment case law, Plaintiffs have a strong likelihood of success

3   on the merits, will, both by presumption and in fact will suffer irreparable harm, the balance of

4   equities is in Plaintiff's favor and there is a clear public interest to protect First Amendment Rights.

5   As such, Plaintiffs respectfully requests that this Honorable Court grant its Motion for Preliminary

6   Injunction and further award Plaintiffs costs and expenses, attorneys' fees, and all other relief to

7   which Plaintiffs are entitled.

8

9        DATED this  19   day of   September                     , 20   22

10

11                                          Pursuant to NRS 53.045, I declare under

12                                          penalty of perjury that the foregoing is true
                                            and correct.

13

14

15                                          */s/ Christopher Peterson*

16                                          CHRISTOPHER M. PETERSON, ESQ.
                                            Nevada Bar No.: 13932

17                                          SOPHIA A. ROMERO, ESQ
                                            Nevada Bar No.: 12446

18                                          **AMERICAN CIVIL LIBERTIES**
                                            **UNION OF NEVADA**

19                                          601 South Rancho Drive, Suite B-11
                                            Las Vegas, NV 89106

20                                          Telephone: (702) 366-1226
                                            Facsimile: (702) 366-1331

21                                          Email: peterson@aclunv.org

22                                          Email: romero@aclunv.org
                                            *Attorneys for Plaintiffs*

23

24

25

26

27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**LR 5-1 PROOF OF SERVICE**

I HEREBY CERTIFY that on the ___19___ day of ___September___ ,20 __22__

I served:   Motion for Preliminary Injunction

_____   EM/ECF;

_____   Electronic mail; or

X   US Mail or Carrier Service

Upon:   Fremont Street Experience, LLC
c/o Childs Watson, PLLC, (Registered Agent)
3271 E. Warm Springs Rd.
Las Vegas, Nevada 89120


The City of Las Vegas
Las Vegas City Clerk,
495 S. Main St.
Las Vegas, Nevada 89101

*/Courtney Jones*
COURTNEY JONES
an employee of the ACLU of Nevada