1   Patrick J. Reilly
    Nevada Bar No. 6103
2   Eric D. Walther
    Nevada Bar No. 13611
3   BROWNSTEIN HYATT FARBER SCHRECK, LLP
    100 North City Parkway, Suite 1600
4   Las Vegas, NV  89106-4614
    Telephone:  702.382.2101
5   Facsimile:  702.382.8135
    preilly@bhfs.com
6   ewalther@bhfs.com

7   *Attorneys for The Fremont Street Experience*
    *Limited Liability Company*

8

9

10                  **UNITED STATES DISTRICT COURT**

11                       **DISTRICT OF NEVADA**

12  KELVIN GORDON, an individual; LILITH        Case No. 2:22-cv-01446-RFB-EJY
    MCGRATH, an individual; KIANA
13  FULLMORE, an individual; and the
    AMERICAN CIVIL LIBERTIES UNION OF           **OPPOSITION TO MOTION FOR**
14  NEVADA FOUNDATION, INC., a domestic         **TEMPORARY RESTRAINING ORDER**
    nonprofit corporation,
15                                              **REQUEST FOR EXPEDITED**
                            Plaintiffs,         **DISCOVERY PENDING HEARING**
16
    v.                                          **(Oral Argument Requested)**
17
    THE CITY OF LAS VEGAS, a local
18  municipal government entity; and FREMONT
    STREET EXPERIENCE, LLC, a domestic
19  limited liability company;

20                          Defendants.

21

22          The Fremont Street Experience Limited Liability Company ("FSE"), incorrectly sued as

23  "Fremont Street Experience, LLC," hereby opposes the Motion for Temporary Restraining Order

24  (the "Motion") filed by Plaintiffs in the above-entitled action.  In addition, FSE requests that this

25  Court authorize pre-hearing discovery pending hearing on this matter and prior to briefing on

26  Plaintiffs' Motion for Preliminary Injunction (ECF No. 8).

27  / / /

28  / / /

1    This Opposition is made pursuant to LR 7-2 and is based on the attached Memorandum of

2  Points and Authorities and supporting documentation, the papers and pleading on file in this action,

3  and any oral argument this Court may allow.

4    DATED this 30th day of September, 2022.

5

6                                          /s/ *Patrick J. Reilly*

7                                          Patrick J. Reilly
                                           Eric D. Walther
8                                          BROWNSTEIN HYATT FARBER SCHRECK, LLP
                                           100 North City Parkway, Suite 1600
9                                          Las Vegas, NV 89106-4614

10                                         *Attorneys for The Fremont Street Experience Limited*
                                           *Liability Company*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

24721289

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................... 1

II.  STATEMENT OF UNDISPUTED FACTS ............................................ 2

  A.  Creation of the Fremont Street Experience. ................................. 2

  B.  The ACLU I Litigation ................................................................. 5

  C.  The ACLU Agrees to Changes to LVMC Chapter 11.68. ............ 6

  D.  FSE's and the City's Use of Age-Restricted Special Event Permits. ....... 8

  E.  Festivus and the Special Events Permit. ...................................... 9

  F.  Mr. Gordon's Professional Performances. .................................. 11

III.  LEGAL ARGUMENT ......................................................................... 13

  A.  Standard of Review. .................................................................... 13

  B.  Plaintiffs Fail to Support Their Factual Allegations With Evidence. ...... 14

  C.  There Is No Imminent Irreparable Harm. .................................... 15

  D.  The Permit is Constitutionally Valid. .......................................... 15

    i.  The Permit is Content-Neutral. ........................................ 16

    ii.  The Permit Furthers a Significant Governmental Interest. ......... 16

    iii.  The Permit is Narrowly Tailored. .................................... 18

    iv.  The Permit Leaves Open Ample Alternative Channels for Communication. ............................................................... 19

  E.  Plaintiffs' Challenge to the Ability of FSE to Operate the Fremont Street Experience Is Barred by Res Judicata and Has Been Waived. ............ 20

    1.  Other Courts in this District Have Already Determined that LVMC 11.68 Does Not Violate the First Amendment. ........ 21

    2.  Plaintiffs' Claims Fail Under the Doctrine of Res Judicata. ...... 21

      i.  There is an Identity of Claims. ................................. 21

      ii.  There Was a Final Judgment on the Merits ................ 22

      iii.  There is Privity Between the Parties ......................... 22

    3.  Plaintiffs' Claims are Barred by the Doctrine of Waiver. ......... 23

    4.  Plaintiffs' Claims are Barred by the Doctrine of Equitable Estoppel. ...... 24

  F.  FSE Does Not "Compete" with Plaintiff Gordon—It Provides a Multi-Million Dollar Attraction That Creates The Very Audience Mr. Gordon Seeks and LVMC Chapter 11.68 Survives Constitutional Scrutiny. ................. 25

    1.  LVMC Chapter 11.68 Directly Advances a Substantial Governmental Interest. ...................................................... 26

    2.  LVMC 11.68 is not more extensive than necessary ............... 27

  G.  Plaintiffs McGrath, Fullmore, and the ACLU Lack Standing ............ 28

H.   This Court Should Allow for Expedited Discovery Before Ruling on the Motion. ........................................................................................................... 30

IV.   CONCLUSION ............................................................................................................... 31

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

24721289

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*ACLU, et al. v. City of Las Vegas* (*ACLU I*)
   United States District Court, District of Nevada, Case No. 2:97-cv-01419-
   LDG-LRL.............................................................................................................. *passim*

*United States v. Albertini*,
   472 U.S. 675 (1985) ................................................................................................ 18, 19

*Anderson v. City of Hermosa Beach*,
   621 F.3d 1051 (9th Cir. 2010) ....................................................................................... 17

*Ariix, LLC v. NutriSearch Corp.*,
   985 F.3d 1107 (9th Cir. 2021) ....................................................................................... 26

*Ashley v. City of Las Vegas*,
   2016 WL 6996999, Case No. 2:16-cv-02053 (Nov. 27, 2016) .............................. 8, 21, 26, 27

*U.S. ex rel. Barajas v. Northrop Corp.*,
   147 F.3d 905 (9th Cir. 1998) ......................................................................................... 22

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*,
   289 F.3d 589 (9th Cir. 2002) ......................................................................................... 14

*Board of Trustees v. Fox*,
   492 U.S. 469 (1989) ...................................................................................................... 26

*Boos v. Barry*,
   485 U.S. 312 (1988) ...................................................................................................... 16

*Carew–Reid v. MTA*,
   903 F.2d 914 (2d Cir.1990) ........................................................................................... 19

*Caribbean Marine Servs. Co., Inc. v. Baldridge*,
   844 F.2d 668 (9th Cir. 1988) .................................................................................... 14, 15

*Citibank, N.A. v. Citytrust*,
   756 F.2d 273 (2d Cir. 1985) ..................................................................................... 14, 15

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
   447 U.S. 557 (1980) ...................................................................................................... 26

*City Council of Los Angeles v. Taxpayers for Vincent*,
   466 U.S. 789 (1984) ...................................................................................................... 19

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii

*Colacurcio v. City of Kent*,
   163 F.3d 545 (9th Cir. 1998)................................................................................... 19, 20

*Contest Promotions, LLC v. City and County of San Francisco*,
   874 F.3d 597 (9th Cir. 2017)........................................................................................ 27

*Greany v. W. Farm Bureau Life Ins. Co.*,
   973 F.2d 812 (9th Cir. 1992)........................................................................................ 24

*Grossman v. City of Portland*,
   33 F.3d 1200 (9th Cir. 1994)........................................................................................ 16

*Headwaters Inc. v. United States Forest Serv.*,
   399 F.3d 1047 (9th Cir. 2005)................................................................................. 21, 22

*Heffron v. Intl. Soc. for Krishna Consciousness, Inc.*,
   452 U.S. 640 (1981)..................................................................................................... 19

*Hunt v. City of Los Angeles*,
   638 F.3d 703 (9th Cir. 2011)........................................................................................ 26

*Jordan v. Jewel Food Stores, Inc.*,
   743 F.3d 509 (7th Cir. 2014)........................................................................................ 26

*Knights of Columbus v. Virginia Tr.*,
   996 F. Supp. 2d 1038 (D. Nev. 2014)........................................................................... 24

*Long Beach Area Peace Network v. City of Long Beach*,
   574 F.3d 1011 (9th Cir. 2009)...................................................................................... 17

*Lopez v. Candaele*,
   630 F.3d 775 (9th Cir. 2010)........................................................................................ 28

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)................................................................................... 25, 28, 29, 30

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997)..................................................................................................... 13

*McCullen v. Coakley*,
   573 U.S. 464 (2014)..................................................................................................... 27

*Metromedia, Inc. v. City of San Diego*,
   453 U.S. 490 (1981) (Brennan, J., concurring)............................................................ 19

*Murdock v. Pennsylvania*,
   319 U.S. 105 (1943)..................................................................................................... 17

*Parkes v. Baca*,
   2021 WL 4901717 (D. Nev. Oct. 1, 2021).................................................................... 15

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

iv

24721289

*Peck v. City of Las Vegas*,
  2016 WL 4697339, Case No. 2:15-cv-02070 (D. Nev. Sept. 6, 2016)
  ................................................................................................................ 8, 21, 26, 27

*Quiroga v. Chen*,
  735 F. Supp. 2d 1226 (D. Nev. 2010) ................................................................. 13

*Richards v. Jefferson County, Ala.*,
  517 U.S. 793 (1996) ...................................................................................... 22, 23

*Salyers v. Metro. Life Ins. Co.*,
  871 F.3d 934 (9th Cir. 2017) ................................................................................ 23

*Stafford v. Rite Aid Corp.*,
  998 F.3d 862 (9th Cir. 2021) ................................................................................ 24

*Stanley v. University of S. Cal.*,
  13 F.3d 1313 (9th Cir. 1994) ............................................................................... 30

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) .............................................................................. 14

*Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
  322 F.3d 1064 (9th Cir.2003) ......................................................................... 21, 22

*Troutt v. Colorado W. Ins. Co.*,
  246 F.3d 1150 (9th Cir. 2001) .............................................................................. 22

*Turner Broad. System, Inc. v. F.C.C.*,
  512 U.S. 622 (1994) ...................................................................................... 16, 18

*Nevada v. United States*,
  364 F. Supp. 3d 1146 (D. Nev. 2019) ................................................................... 14

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ................................................................................... *passim*

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................... 13, 14, 28

**Statutes**

LVMC § 10.44 ........................................................................................................ 5

LVMC § 11.68 ................................................................................................ *passim*

LVMC § 11.68.010(A) ............................................................................................ 3

LVMC § 11.68.020 .............................................................................................. 28

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

24721289

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

LVMC § 11.68.020(H) ............................................................................................ 6

LVMC § 11.68.030 ............................................................................................ 3, 4

LVMC § 11.68.040 ............................................................................................ 3, 4

LVMC § 11.68.060 .............................................................................................. 3

LVMC § 11.68.070 .............................................................................................. 3

LVMC § 11.68.070(C) ........................................................................................ 4

LVMC § 11.68.070(G) ........................................................................................ 9

LVMC § 11.68.100 ............................................................................................ 13

LVMC § 11.68.100(B)(4) .................................................................................. 13

LVMC § 11.68.107 ................................................................................... 7, 13, 28

LVMC § 11.68.107(4) ....................................................................................... 13

LVMC § 11.68.108 .............................................................................................. 7

LVMC § 11.68(B) ................................................................................................ 6

LVMC § 11.68(H) ................................................................................................ 6

NEV. REV. STAT. § 268.810(2) .......................................................................... 2

NEV. REV. STAT. § 268.810 *et seq.* ................................................................. 2

**Other Authorities**

U.S. CONSTITUTION, amend I ................................................................... *passim*

FED. R. CIV. P. 26(d)(1) ................................................................................... 30

FED. R. EVID. 201 ............................................................................................... 8

U.S. CONSTITUTION ......................................................................................... 25

Hon. William W. Schwarzer, et al., FEDERAL CIVIL PROCEDURE BEFORE TRIAL §
13:157 (2022) .......................................................................................... 30

https://alansands.com/contortionists/kelvin-gordon-malenga-mtakata .................. 11, 26

https://en.wikipedia.org/wiki/Fremont_Street_Experience#SlotZilla_Zip_Line ........... 4

https://news3lv.com/news/local/aclu-threatens-litigation-after-fremont-street-
experience-21-only-signs-stay-up .......................................................... 29

24721289

https://vegasexperience.com/festivus/ ................................................................. 9

https://vegasexperience.com/slotzilla-zip-line/slotzilla-faq/ ........................................ 4

https://vegasexperience.com/viva-vision-light-show/ ................................................ 4

https://www.linkedin.com/in/kelvin-gordon-700b2a9/ .............................................. 11

https://www.reviewjournal.com/crime/courts/suspect-in-fatal-fremont-street-
    experience-shooting-appears-in-court-2616411/ ........................................ 10, 17

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

24721289

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## I.

## INTRODUCTION

This is a First Amendment action involving the Fremont Street Experience Pedestrian Mall (the "Fremont Street Experience" or the "Mall"), an entertainment and tourist attraction built in 1995 upon what was formerly Fremont Street in Downtown Las Vegas. Plaintiffs essentially raise three different challenges: (1) that City ordinances favor speech and activity of FSE at the expense of Mr. Gordon, a professional performer; (2) that Mr. Gordon is entitled to use a cart for the convenience of transporting his equipment to and from his performances on the Fremont Street Experience, despite being prohibited by City law; and (3) that a special events permit unlawfully restricts access to the Fremont Street Experience for those between the ages of 18 and 21.

In a Motion for Temporary Restraining Order without any supporting evidence and only a handful of citations to the Complaint, Plaintiffs repeatedly misstate the facts. Remarkably, the ACLU raises the very same challenge it brought (and voluntarily dismissed with prejudice in 2011) in a prior lawsuit against FSE and the City. The ACLU also challenges laws in which it collaborated with the City and FSE, worked on the drafting of those rules, and went on the record at passage to state their full support, with the City Council voting for passage in reliance upon the ACLU's approval. Plaintiffs also wrongfully contend that the special events permit bars them from entering the Fremont Street Experience. In reality, the special events permit covers only half of the Fremont Street Experience. And, contrary to their allegations, "Festivus" was and is still being advertised.

Plaintiffs' Motion also repeatedly misstates the law. They ignore that the commercial speech standard applies to Mr. Gordon, who is a professional performer acting for monetary gain on the Fremont Street Experience. Plaintiffs argue that the strict scrutiny standard applies when it does not, and ignores the "time, place, manner" standard governing the city laws being challenged. Plaintiffs also opine that Mr. Gordon's cart complies with the City code. It does not.

In short, this filing is a far cry from the days when the City, FSE, and ACLU worked collaboratively to end a 14 year-long lawsuit and rewrote the City's laws together. The City and

1

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

FSE have been willing to continue to act in good faith and collaborate.  The ACLU has not.  In the meantime, FSE and the City have been trying to prevent violence and save lives (at a cost to FSE of approximately $8,000 per day) in a manner that is narrowly tailored and leaves open ample alternative channels of communication.  Accordingly, Plaintiffs' Plaintiffs' Motion is without merit and should be denied by this Court.

## II.

### STATEMENT OF UNDISPUTED FACTS

**A.      Creation of the Fremont Street Experience.**

In 1993, the Nevada Legislature enacted legislation enabling the state's largest cities to create pedestrian malls.  *See* NEV. REV. STAT. § 268.810 *et seq.*  Specifically, the Legislature declared as follows:

> There has been a progressive decline in the economic growth and vitality of businesses located in the business districts in the areas of densest population in this State that:
>
> (a)   Is attributable to the decrease in tourists and other visitors to these business districts;
>
> (b)   Necessitates special efforts to promote economic growth and revitalization of these economically depressed business districts to create new jobs and maintain existing employment opportunities, attract new businesses, tourists and visitors to these districts and to prevent further decline by restoring the economic growth and vitality of these business districts; and
>
> (c)   Makes it of particular local benefit to allow municipalities experiencing such economic decline to create pedestrian malls and, if necessary, to raise money for the annual costs of operating, managing, maintaining or improving them through the levy of assessments upon the property or the imposition of fees on the businesses which benefit from the return of tourists and other visitors to the area resulting from the pedestrian mall.

NEV. REV. STAT. § 268.810(2).  The Legislature further concluded it was "in the best interests of the State to encourage municipalities to create pedestrian malls to enhance and improve their local business climates and that selecting and contracting with a private entity for the acquisition, construction, improvement, operation, management or maintenance of pedestrian malls, or any combination thereof, may also be in the best interests of the public." NEV. REV. STAT. § 268.810(2).

Shortly after this enabling legislation was enacted, the Las Vegas City Council enacted its own pedestrian mall ordinance in what became Las Vegas Municipal Code ("LVMC") Chapter

24721289

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1    11.68.  The City stated:

2
> [T]here has been a progressive decline in the economic growth and
3
> vitality of businesses located in the central business district of the
> City which is attributable to the decrease in tourists and other
4
> visitors to the central business district, that a special effort is needed
> on the part of the City to create new jobs, maintain existing
5
> employment opportunities, attract new businesses, tourists and
> visitors to the central business district and thereby restore the
6
> economic growth and vitality thereof and that the closure of certain
> streets or parts thereof to vehicular traffic and the creation of a
7
> Pedestrian Mall for the movement, safety, convenience, enjoyment,
> entertainment, recreation and relaxation of pedestrians is in the best
8
> interest of the City and beneficial to the owners of adjacent property
> and the businesses located in the central business district.

9    LVMC § 11.68.010(A).  The City then established a pedestrian mall, defined its boundaries, and

10   designated FSE "as the private operating entity for purposes of acquiring, constructing, improving,

11   operating, managing and maintaining the Pedestrian Mall."  *See* LVMC §§ 11.68.030, 11.68.040,

12   and 11.68.060.  The City also delegated to FSE the authority to control and regulate the pedestrian

13   mall, including conferring "access to the Pedestrian Mall by the public and closure of the Pedestrian

14   Mall to the public for purposes of special events or activities for limited periods of time."  LVMC

15   § 11.68.070.

16       As evidenced by the Declaration of Patrick Hughes,[1] which is attached to the Appendix of

17   Exhibits (the "Appendix") as **Exhibit "A"**, and the Declaration of Andrew Simon,[2] which is

18   attached to the Appendix **Exhibit "B"**, the City's decision received broad business and public

19   support. The area had become dirty, unattractive and burdened by panhandlers and criminal

20   elements.  Exhibit A at ¶ 5.  This blighted environment—along with competition from the Las

21   Vegas Strip—resulted in staggering financial losses for downtown businesses, and indeed was an

22   existential threat to the downtown business corridor. *Id.* In that environment, area businesses

23   struggled to attract patrons as tourists migrated to the new megaresorts along Las Vegas Boulevard.

24   *Id.*  Hoping to reverse the downward spiral and preserve the downtown business core and the jobs

25   and tax revenues they represent, the City Council voted unanimously to create the Mall, closed the

26   _____

27   [1] Mr. Hughes is the former President and Chief Executive Officer of FSE.  His Declaration was
previously submitted in Case No. 2:16-cv-2053-GMN-VCF as ECF No. 13-1. *See* Exhibit A.

28   [2] Mr. Simon is the current President and Chief Executive Officer of FSE.  Exhibit B.

24721289

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

area to vehicular traffic, and tasked FSE to build and manage the Fremont Street Experience Mall. *Id.*; *see also* LVMC § 11.68.030.

The Fremont Street Experience Mall consists of six blocks of what used to be City streets. Exhibit B. The boundaries extend on what was formerly five blocks of Fremont Street between Main Street and Las Vegas Boulevard (intersected by vehicular traffic at Casino Center Boulevard and Fourth Street), and a sixth block on what was formerly Third Street between Fremont Street and Ogden Avenue ("Third Street North"). Exhibit B; *see also* LVMC § 11.68.040.

The City's ordinance also provides that FSE is charged with renting retail space on the Fremont Street Experience. LVMC § 11.68.070(C). FSE has done so with a host of vendors since the Mall's opening in December 1995. Exhibits A and B. Some of these vendors have occupied permanent or semi-permanent structures under long term leases and sponsorships. *Id.* Other vendors rent portable kiosks that are at designated locations based, in part, upon their need to access fixed electrical outlets. *Id.* Still others provide services and occupy certain portions of the Mall on an *ad hoc* basis as directed by FSE. *Id.* The rent paid by these vendors, in part, provides some of the operating revenue that allows the Mall to operate. *Id.*

Since the original construction, the Mall has undergone various improvements and changes. FSE has undertaken multiple improvements to the overhead Viva Vision canopy, which is now the world's largest digital display. Exhibit B. The renovated screen boasts 16.4 million brilliant pixels, is 1,375 feet long, 90 feet wide and suspended 90 feet above Fremont Street's renowned pedestrian mall, lined by iconic casinos and hotels. *Id.*[3] FSE has also added Slotzilla, a "12-story, slot machine-inspired zip line attraction" that offers two levels of ziplines. *Id.* The lower zipline travels halfway down the Fremont Street Experience 77 feet above the ground. *Id.* The upper "Zoomline" runs the entire length of the Fremont Street Experience 114 feet above the ground. *Id.* SlotZilla cost $17 million to construct and features a launch tower with over-sized dice, a martini glass, a pink flamingo, simulated video reels, a giant arm and two 37-foot-tall showgirls. *Id.*[4]

---

[3] *See also* https://vegasexperience.com/viva-vision-light-show/.

[4] *See* also https://en.wikipedia.org/wiki/Fremont_Street_Experience#SlotZilla_Zip_Line and https://vegasexperience.com/slotzilla-zip-line/slotzilla-faq/.

24721289

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

To fulfill its statutorily-created duty, FSE actively markets the Mall to attract visitors to the downtown business corridor. Exhibits A and B.  It also provides free entertainment, much of which occurs stages at various locations on the Mall.  *Id.*  This entertainment brings millions of visitors to the area every year, and these tourists likely would not visit downtown Las Vegas but for the Mall and FSE's efforts to attract them to the area. *Id.*

Pursuant to the ordinances and operating agreement, FSE has undertaken extensive advertising and promotion campaigns to attract tourists to the Mall and surrounding business area. Exhibits A and B.  As the Mall's manager, FSE is responsible for providing security and sanitation services to maintain safety and cleanliness that is indispensable to attracting visitors, at significant cost each year.  *Id.*  Because of this hard work, the Fremont Street Experience is light years different from the days before the Mall was constructed, and the estimated number of average daily visitors has increased from 24,631 to 65,753.  Exhibit B.

In the nearly 27 years in which the Mall has been in operation, FSE has expended well in excess of $400,000,000 on construction, promotion and operations. Exhibits A and B.  As a result of that investment, the Fremont Street Experience has been pivotal in reversing the decline of Las Vegas's downtown business core by providing a safe and attractive environment that attracts tourists and residents alike.  *Id.*

**B.**     **The *ACLU I* Litigation.**

In 1997, the ACLU commenced a civil action against the City and FSE in *ACLU, et al. v. City of Las Vegas*, et al., United States District Court, District of Nevada, Case No. 2:97-cv-01419-LDG-LRL (the "*ACLU I Litigation*").  A copy of the Amended Complaint in *ACLU I* is attached to the Appendix as **Exhibit "C"**.  The *ACLU I Litigation* asserted numerous allegations regarding the constitutionality of LVMC Chapters 10.44 and 11.68 as they existed at the time.  One of the allegations included the principal claim asserted in this case, namely that the state and city enabling laws establishing the Fremont Street Experience unfairly exempt FSE from regulations limiting expressive activities.  The ACLU alleged:

> By its terms, the ordinance also prohibits street performers who might compete with the mall's entertainment.

24721289

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

> Additionally, the restrictions contained in LVMC § 11.68(B) (street vending) and § 11.68(H) (tables and displays) only apply to outside groups like the Plaintiffs. Organizations or other entities that are affiliated with the FSELLC or who have obtained the approval of FSELLC officials are not subject to the restrictions. These activities, including parades, are not restricted if conducted in connection with a special event or mall entertainment or otherwise authorized by FSELLC officials. LVMC § 11.68.020(H).

Exhibit C at ¶¶ 36 and 41. Ultimately, after multiple trips to the Ninth Circuit Court of Appeals, visiting District Court Judge David Ezra suggested (and the parties agreed to) engage in settlement discussions. On October 24, 2011, the parties settled the *ACLU I* lawsuit and the remaining case was dismissed in open court. *See* Minutes of Proceedings, Case No. 2:97-cv-01419, at ECF No. 269.

**C.      The ACLU Agrees to Changes to LVMC Chapter 11.68.**

Concurrent with and part of the foregoing settlement discussions, the ACLU and the City discussed changes to LVMC Chapter 11.68. As evidenced by the minutes of a City Recommending Committee meeting on January 18, 2011, and a full City Council meeting on February 2, 2011, attached respectively to the Appendix as **Exhibit "D"** and **Exhibit "E"**, the ACLU and City worked together to draft amendments to the Chapter. The ACLU actively participated in drafting these changes, and endorsed them on the record. *Id.* During the process of rewriting Chapter 11.68, the ACLU made no complaint that the Fremont Street Experience unlawfully "competed" with speakers, and did not suggest any such changes to the ordinance in that regard. *See id.* To the contrary, the ACLU stated:

> ALLEN LICHTENSTEIN, ACLU, commended CITY ATTORNEY JERBIC and others for their time and efforts and expressed support for the proposed amendment. He echoed CITY ATTORNEY JERBIC'S comments and agreed this amendment is workable and better for the Fremont Street Experience.

Exhibit D.

Four years later, in 2015, the City and ACLU again collaborated to make changes to LVMC Chapter 11.68. These changes dealt specifically with street performers. The need for the changes was based on a number of issues that had arisen between 2011 and 2015. Many street performers claimed "ownership" to performance locations, often resulting in fights with one another over those

24721289

locations.  *See* Exhibit A.  There were also numerous incidents between street performers and members of the public involving payment for the taking of photographs.  In one particularly frightening incident, a street performer fired an electric shock taser gun upon a Mall visitor when he refused to pay the street performer's demand for a tip.  Exhibit A.  In another instance, a street performer posed for a photo with a family and demanded payment afterward.  When the family was unable to pay on the spot, the street performer held the family's child hostage until the father located an automated teller machine and returned to pay to have his child "released."  *Id.*

Those drafting the 2015 ordinances were careful to protect the First Amendment rights of street performers by (1) instituting buffer zones only around points of ingress and egress and natural pedestrian stopping points (such as around businesses and during sponsored events), (2) requiring the use of performance zones only during peak Mall hours, (3) ensuring that all street performers are given equal chance to perform with an anonymous lottery system of assigning performance zones, and (4) targeting only the manner of performances that were causing the congestion and safety problems that were creating a toxic environment in the Mall. *i.e.,* street performances.  *See* LVMC §§ 11.68.107-108.

Again, the ACLU actively collaborated with the City on the desperately needed changes. *See* Minutes of City Council Meeting (Aug. 5, 2015) (City and ACLU jointly meeting with street performers to hear comments regarding proposed ordinance), Minutes of City Council Meeting (Sept. 2, 2015) (City Attorney Jerbic thanked the ACLU "for their comments" and "input") and Minutes of City Council Meeting (Sept. 16, 2015), respectively attached to the Appendix as **Exhibit "F"**, **Exhibit "G"**, and **Exhibit "H"**.  The ACLU specifically stated as follows:

> MS. ROSE thanked those who participated in the process and for taking the protection of civil rights seriously. She stated that the amendment addresses the ACLU's concerns, but she will continue to monitor this to ensure that the ordinance is being applied properly.

Exhibit H.  Here too, the ACLU did not complain that the Fremont Street Experience "competed" with speakers engaging in First Amendment rights.   To the contrary, the ACLU actively participated in the drafting of those rules, which can now be found at LVMC §§ 11.68.107 and 11.68.108.

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

24721289

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Obviously, the ACLU did not challenge the 2011 or 2015 amendments to LVMC Chapter 11.68. Two street performers did. In *Ashley v. City of Las Vegas,* 2016 WL 6996999, Case No. 2:16-cv-02053 (Nov. 27, 2016), U.S. District Court Judge Navarro upheld the street performer ordinance. In *Peck v. City of Las Vegas*, 2016 WL 4697339, Case No. 2:15-cv-02070 (D. Nev. Sept. 6, 2016), U.S. District Court Judge Dorsey upheld the street performer rules with one minor exception—she held that open performance spaces must be made available on a first come first served basis if a street performer with an assigned spot does not appear to perform.[5] With that modest limitation, those rules have remained in place since then.

**D.      FSE's and the City's Use of Age-Restricted Special Event Permits.**

Despite Plaintiffs' feigned shock at the use of 21-and-over age-restricted special event permits, they are commonly used by municipalities, including the City. **FSE is aware of nearly one thousand such special event permits issued by the City since 2015 alone**. Exhibit B; *see also* list of 21-and-over age-restricted special event permits issued by the City attached to the Appendix as **Exhibit "I"**.

FSE itself has been the recipient of approximately sixty (60) 21-and-over age-restricted special event permits since at least 2013. *See* list of age restricted permits and various age restricted permits issued to FSE collectively attached to the Appendix as **Exhibit "J"**; *see also* Exhibit B. Specifically, the City has regularly issued such permits to FSE when "First Friday" events have taken place in the Arts District south of the Fremont Street Experience. *Id.* FSE has requested these permits, and they have been issued, as a public safety measure due to increases in criminal activity (and sometimes violence) that occurred when a noticeably younger demographic found its way from First Friday events to the Fremont Street Experience. *Id.* Another notable example, of course, is every New Year's Eve on the Mall, where FSE has obtained an age-restricted special events permit for persons 21 and over for approximately a quarter century. *Id.* In addition, FSE has been the recipient of countless special events permits over the years authorizing multi-date events, sometimes over extended periods of time. *Id.*

---

[5] FSE respectfully requests that the Court take judicial notice of the dockets and filings made in the *ACLU I*, *Peck* and *Ashley* cases. *See* FED. R. EVID. 201.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

The ACLU has **never** complained about the issuance of such permits before. Nor should it have, as the City Municipal Code specifically allows FSE to close all or portions of the Mall for special events for limited periods of time. *See* LVMC § 11.68.070(G).

**E.     Festivus and the Special Events Permit.**

On July 12, 2022, FSE obtained a special events permit for "Festivus."  A copy of the Permit is attached to the Appendix as **Exhibit "K"**.  The Permit describes the event as follows:

> Music and entertainment event. Restricted access to FSE- Restricted access to 21+ on each event date. Restrictions include No Strollers, No Package Beverages, No Coolers, No Chairs, No Backpacks/Luggage, No Costume Masks, No Face Paint, No Glass/Aluminum, No Weapons- Fake or Real- any instrument or device for use that can be used in attack or defense against an opponent, adversary or victim. Prohibited weapons include but not limited to: all guns and knives fake or real, martial arts weapons, brass knuckles, air guns, electrical weapons such as Stun Guns/Tasers, anything that expel a projectile, sharp tools, bats, protective sprays, anything explosive, simulated weapons including toy guns, swords and pistols, common items such as razor blades, pipes, chains, ice picks, or similar instruments with sharp edges. All equipment and bags are subject to search.

*Id.*  As the Court can see, the Permit contains a number of restrictions related to public safety, including restrictions against real and fake weapons, packaged liquor, and other items that can pose a safety risk for visitors. Exhibit B.  The Permit notably does not contain any restrictions on speech or First Amendment activity.

Significantly, the Permit covers only half of the area of the Fremont Street Experience, namely the three blocks from Casino Center Drive to Fourth Street.  Exhibit K.  The Permit does **not** apply to the area from Main Street to Casino Center, the area from Fourth Street to Las Vegas Boulevard, or Third Street North.  *Id.*  The Permit is limited in time and duration, applicable only from 8:00 p.m. to 5:00 a.m. on Friday, Saturday, and Sunday nights.  *Id.*  The Permit expires on November 28, 2022.  *Id.*

Plaintiffs' allegation that Festivus is a "sham" designed to keep them off of the Mall is incorrect.  FSE has advertised Festivus on its internet website throughout the event.  Exhibit B; *see also* https://vegasexperience.com/festivus/.  FSE has also advertised Festivus on its stages and with electronic signs posted on the Mall.  *See* videos submitted as **Exhibit "L"**, **Exhibit "M"**, and

9

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  **Exhibit "N"**.  FSE has even advertised Festivus on its giant canopy, which extends four blocks

2  long.  *See* **Exhibit "O"**.  During the event, FSE has featured hundreds of music and entertainment

3  performances, as stated on the Permit.  Exhibit B.

4      The restrictions contained in the Permit are founded on public safety.  The three block area

5  of the Fremont Street Experience covered by the Permit is surrounded by age-restricted casinos and

6  bars.  Exhibit B.  The Permit applies only during limited periods, late at night and on the weekends

7  when the Fremont Street Experience is busiest, and in the area of the Fremont Street Experience

8  that is busiest.  *Id.*  During these periods and in these locations, the Fremont Street Experience

9  becomes the outdoor equivalent of a concert venue.  *Id.*  The area becomes extremely crowded and

10  has been subjected to increasing numbers of violent incidents in 2021 and 2022.  *Id.*

11      The potential for violence becomes particularly difficult to control as crowds swell late into

12  the evening on weekends.  Exhibit B.  For example, on January 6, 2022, FSE's Head of Security,

13  Mark Reddon, was beaten up by a gang of young street performers who refused to comply with the

14  City ordinances.  Exhibit B at.  Mr. Reddon was sent to the hospital where he received treatment

15  for substantial injuries, including a broken orbital bone.  *Id.*  In June and July 2022, there were five

16  shootings on the Mall, one of which was allegedly committed by a juvenile that resulted in the

17  death of a visitor to the Fremont Street Experience.  *Id.*; *see also*

18  https://www.reviewjournal.com/crime/courts/suspect-in-fatal-fremont-street-experience-shooting-

19  appears-in-court-2616411/.

20      This increase in violence, and in the number of violent incidents, directly paralleled a

21  substantial increase in the number of young people under age 21 frequenting the Fremont Street

22  Experience during late night hours on the weekend.  Exhibit B.  Often during these crowded periods,

23  fights have started as a result of "disrespect" incidents in which one youth bumps into another

24  (inadvertently or not), triggering escalating violent disputes, sometimes with guns and knives, that

25  have resulted in death and serious bodily injury.  *Id.*  Prior to the issuance of the Permit, officials

26  of the Metropolitan Police Department ("Metro") specifically offered its unequivocal and full-

27  throated opinion that the increase in violence on the Fremont Street Experience was being caused

28  directly by the sharp increase in persons under 21 visiting the Mall late at night on the weekends.

10

24721289

1   Exhibit B.  Metro officials specifically noted the so-called "disrespect" incidents as a trigger for

2   violence.  *Id.*  FSE's own statistics show **290** juvenile incidents on the Fremont Street Experience

3   from January 1, 2021 through September 23, 2022.  Exhibit B.

It does not require the kind of years-long statistical analysis that Plaintiffs suggest is needed

4   to conclude that FSE and the City have a substantial interest in public safety, and that the Permit,

5   and other permits like it that have been issued in the past, directly serve that substantial interest.

6   Notably, since the issuance of the Permit on July 7, 2022, **there has not been a single robbery,**

7   **shooting, or stabbing incident on the Fremont Street Experience on the weekend**.  Exhibit B.

8   That being said, FSE is in no hurry to impose a permanent curfew on the Fremont Street

9   Experience.  Exhibit B.  Enforcing the restrictions contained in the Permit requires erecting

10   barricades and operating metal detectors on a nightly basis, requiring significant additional labor.

11   *Id.*  This is an expensive endeavor for FSE, at an estimated cost of $8,000 each night.  In addition,

12   some visitors are not happy that they are required to line up in a queue and proceed through a metal

13   detector to enter the restricted area.  *Id.*  The Permit also effectively controls the number of people

14   in the restricted area, something the neighboring businesses are surely not fond of.  *Id.*  That,

15   however, is the price for public safety.

**F.    Mr. Gordon's Professional Performances.**

Plaintiff Kelvin Gordon ("Mr. Gordon") is a professional entertainer and contortionist who

works for money.  He is represented by an agent[6] and has performed on The Tonight Show, the

Drew Carey Show, America's Got Talent, and other shows.  *See videos* submitted as **Exhibit "P"**

and **Exhibit "Q"**.  Mr. Gordon also performs at FSE for the purpose of receiving tips from the

public.  *See* Motion at  4:14-16.  He describes himself on LinkedIn as "Contortion/Martial Artist at

Self Enhancement, Inc."[7]  Mr. Gordon's performance involves *inter alia* squeezing himself into a

small box.  Over the years, he has used a lightweight clear box that appears to be made out of and

reinforced with plastic.  Exhibits P and Q.

---

[6] https://alansands.com/contortionists/kelvin-gordon-malenga-mtakata.

[7] https://www.linkedin.com/in/kelvin-gordon-700b2a9/.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

24721289

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

Mr. Gordon has been performing at the Fremont Street Experience since at least 2017. Exhibit B. And, despite his attempt to portray himself as a victim of the City and FSE, Mr. Gordon routinely violates City ordinances when performing. Exhibit B. He is notorious for leaving items unattended, which constitutes a tripping hazard for visitors who are walking through the Fremont Street Experience looking at anything but the ground. *Id.* In one video submitted herewith as **Exhibit "R"**, Mr. Gordon left his contortion box unattended in the middle of the Mall for at least four minutes. Thirty seconds into the video, a woman nearly trips over the box before her husband steers her away from Mr. Gordon's tripping hazard. *Id.* After nearly four minutes, Mr. Gordon returns to sit on the box so he can camp to wait for another performance circle to open up. *Id.*

Despite the many warnings given without citations issued, and repeated attempts to bend over backwards for Mr. Gordon, he still often refuses to follow the law. In 2021 and 2022, he was cited for the following violations:

**Total Violations in 2021: 16**
Equipment Violations: 7
Failure to Display Registration Credentials: 6
Emitting Sound During Light Show: 1
Performing Outside of a Designated Location 1
Reserving a Designated Location:1

**Total Violations in 2022: 15 through mid-September)**
Equipment Violations: 5
Failure to Display Registration Credentials: 3
Emitting Sound During Light Show: 2
Performing Outside of a Designated Location: 2
Reserving a Designated Location:1
Failure to Rotate Locations:1
Mutual Battery: 1

*See* List of Gordon Busker Violations attached to the Appendix as **Exhibit "S"**. As the Court can see, one of Mr. Gordon's violations in 2022 involved a "mutual battery" on May 19 where Gordon punched another male. That "Mutual Battery" was captured in three security camera videos in which Mr. Gordon and an unidentified passerby exchange words, the man throws an empty plastic bottle at Mr. Gordon, and Mr. Gordon punches the man. Later, when the man walks in the general vicinity (but does not approach Mr. Gordon), Mr. Gordon pursues the man, punches and kicks him, and then chases him through a construction area around the corner. *See* videos submitted herewith as **Exhibit "T"**, **Exhibit "U"**, and **Exhibit "V"**.

Mr. Gordon uses a heavy cart to transport performance items to and from his designated performance location and contends that his cart "complies with the provisions of LVMC Chapter 11.68." Motion at 4:19-20.  He is wrong.  First, carts are prohibited from the Fremont Street Experience pursuant to City ordinance.  LVMC § 11.68.100(B)(4) specifically prohibits the "placement of any cart, wagon, table, rack, chair, box, cloth, stand, booth, container, structure" on the Fremont Street Experience unless as "specifically allowed" under LVMC 11.68.107.  While LVMC § 11.68.107 makes exceptions for other matters, it does not specifically exempt the use of carts.  Instead, it allows a street performer to place objects on the ground only if they remain "within a two foot radius of the performer; do not obstruct or impede pedestrian traffic or cause a potential risk to passersby; and are integral to the performance (e.g., a hat or container to accept donations)." LVMC § 11.68.107(4).

Mr. Gordon's cart fails that exemption on multiple fronts.  First, the cart is not integral to his performance and, by his own admission, is not even used in his performance.  Rather, he claims to use the cart *for convenience* to transport his performance items to and from his performance. Motion at 4:14-15:3.  And though he appears to use a heavier box now as part of his performance, it is certainly not integral to that performance, as Mr. Gordon performed for years with a lighter, plastic reinforced box that surely does not require a cart for transportation.  *See* Exhibits P and Q. Second, Mr. Gordon has been seen many times leaving his cart outside the circle unattended during performances. Exhibit B.  Though he has been told not to do that by FSE Security (usually without being cited) he continues to violate LVMC § 11.68.100.

## III.

## LEGAL ARGUMENT

### A.    Standard of Review.

The standard for obtaining a temporary restraining order and preliminary injunction is the same. *Quiroga v. Chen*, 735 F. Supp. 2d 1226 (D. Nev. 2010).  "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  showing, carries the burden of persuasion." (quotation omitted)).  To warrant this extraordinary

2  remedy, Plaintiffs must demonstrate that they are "likely to succeed on the merits, that [they are]

3  likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities

4  tips in [their] favor, and that an injunction is in the public interest."  *Winter*, 555 U.S. at 20.

5  In addition, the threat of irreparable harm must be *imminent*.  *Caribbean Marine Servs. Co.,*

6  *Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (plaintiff must demonstrate "immediate

7  irreparable harm").  Delay in seeking preliminary injunctive relief often cuts against finding

8  imminent irreparable harm.  *See, e.g., Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276-77 (2d Cir.

9  1985) (presumption of irreparable harm negated when plaintiff delayed in filing suit for nine

10  months).

11  **B.     Plaintiffs Fail to Support Their Factual Allegations With Evidence.**

12  Plaintiffs' Motion is noticeable in two respects—the lack of evidence and lack of citation

13  to any evidentiary record.  Plaintiffs submit no evidence whatsoever with their Motion.  And in

14  only a handful of instances do Plaintiffs cite back to their Complaint for evidentiary support.  For

15  example, in the section "Facts Specific to Mr. Gordon," unsupported facts are represented for nearly

16  two pages.  Only the last sentence provides an evidentiary citation, referring back to the Complaint

17  "at Ex. 1, at 2-4."  Motion at 5:24.  The preceding factual allegations contain no citation at all,

18  making it impossible to locate, much less assess, the evidence Plaintiffs contend support their

19  claims.

20  Needless to say, it is also difficult to rebut a factual allegation when there is no evidence

21  that is either provided or cited to.  Accordingly, FSE objects to any assertion of fact made in the

22  Motion that is not specifically referenced to and supported by an evidentiary citation.  *See Nevada*

23  *v. United States*, 364 F. Supp. 3d 1146, 1151 (D. Nev. 2019) (allegations in a motion for preliminary

24  injunction "must be supported with **actual evidence**, and not merely conclusory statements or

25  unsupported allegations") (emphasis added); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th

26  Cir. 2009) (a motion for preliminary injunction "must be supported by evidence"); *Barcamerica*

27  *Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) (statements and

28  arguments of counsel are not evidence).  FSE similarly objects to any assertion of fact made in the

1    Motion that simply references the previously filed Complaint.  *See Parkes v. Baca*, 2021 WL

2    4901717, at *3 (D. Nev. Oct. 1, 2021) ( it is "procedurally improper" when a newly filed motion

3    "simply refers to the previously filed exhibits appended to [a prior filing].").

4    **C.     There Is No *Imminent* Irreparable Harm.**

5           Plaintiffs' Motion also fails for the simple reason that preliminary injunctive relief requires

6    a finding of *imminent* irreparable harm, and Plaintiffs have unduly delayed in bringing this action.

7    The Fremont Street Experience opened ***in 1995***.  Yet, Plaintiffs allege that FSE unlawfully

8    competes with Mr. Gordon and other street performers like him.  Setting aside that there would be

9    no spectators for Mr. Gordon's performance if it were not for the Fremont Street Experience, he

10   has been performing there since at least 2017.  Why did he wait five years to bring this claim?  Why

11   has the ACLU waited for more than a decade since the settlement of *ACLU I* to raise this allegation,

12   particularly after it raised and then dismissed the same allegation in that case?

13          Plaintiffs also waited for years to challenge the issuance of 21-and-over special event

14   permits at the Fremont Street Experience.  Such permits have been issued regularly dating back to

15   at least 2013 to coincide with every New Year's Eve and every First Friday event.[8]  Exhibits B and

16   J.  The City has also issued thousands of such permits over the years to numerous parties.  Exhibit

17   I.  None of the Plaintiffs have complained about the issuance of such permits in the last decade, and

18   have provided no explanation as to why they have waited until now to bring this challenge.  Exhibit

19   B.

20          Accordingly, because the Ninth Circuit requires a finding of *imminent* irreparable harm, and

21   because Plaintiffs delayed for years in bringing their challenge, their request for a Temporary

22   Restraining Order must be denied.  *See Caribbean Marine Servs.*, 844 F.2d at 674, and *Citibank,*

23   756 F.2d at 276-77.

24   **D.     The Permit is Constitutionally Valid.**

25          Intermediate scrutiny applies to regulations governing the time, place, or manner of speech.[9]

26   _____

27   [8] FSE is unaware of whether such permits were issued before 2013, as it simply does not have
     records in place dating back that far.  Exhibit B.

28   [9] Plaintiffs suggest that *strict* scrutiny applies any time any government restriction involves a
     traditional public forum.  Motion at 8:1-9.  This position is entirely inaccurate, however, as

Brownstein Hyatt Farber Schreck, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

24721289

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

*Grossman v. City of Portland*, 33 F.3d 1200, 1205 (9th Cir. 1994); *Turner Broad. System, Inc. v. F.C.C.*, 512 U.S. 622, 662 (1994).  Under intermediate scrutiny, restrictions in designated public fora are valid as long as they: (1) are content-neutral; (2) are narrowly tailored to serve a significant governmental interest; and (3) leave open ample alternative channels for communication of the information.  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  As discussed herein, Plaintiffs cannot meet their burden of establishing that the Permit is unconstitutional under intermediate scrutiny.

### i.    The Permit is Content-Neutral.

"The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech ***because of disagreement with the message it conveys***." *Ward*, 491 U.S. at 791 (emphasis added); *see also Boos v. Barry*, 485 U.S. 312, 320 (1988) ("we described 'content-neutral' speech restrictions as those that are justified without reference to the content of the regulated speech") (internal quotations omitted).  "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward*, 491 U.S. at 791.

Here, the Permit is undoubtedly content-neutral because it applies ***equally*** to ***everyone*** under 21 years old, regardless of any speech-based considerations.  Indeed, the Permit does not single out or address any particular categories of speech in any way.  Moreover, the Permit "serves purposes unrelated to the content of expression." *Ward*, 491 U.S. at 791.  Specifically, the Permit's restrictions relate solely to public safety, and make no reference to speech or other protected activity.  Because the Permit serves a purpose that has nothing to do with the content of speech, it must be considered content-neutral.  As such, the first prong of intermediate scrutiny is satisfied.

### ii.    The Permit Furthers a Significant Governmental Interest.

Cities have a significant interest in "regulating streets to protect and insure the

---

intermediate scrutiny applies to content-neutral restrictions on the time, place, and manner of speech. *Turner*, 114 S. Ct. at 2469.  Indeed, Plaintiffs conceded this fact in their Complaint.  *See* Complaint, ECF. 1, at 3:15-23 (applying the "time, place, manner" analysis of intermediate scrutiny).

safety, comfort, or convenience of the public." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1024 (9th Cir. 2009) (quoting *Murdock v. Pennsylvania*, 319 U.S. 105, 116 (1943)); *see also Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1065 (9th Cir. 2010) (cities have a significant interest in addressing "health and safety concerns" of the public.).

In this case, the Permit furthers the significant government interest of protecting public safety.  It includes restrictions against real and fake weapons, packaged liquor, and other items that can pose a safety risk for visitors.  The restricted three-block area covered by the permit is part of a narrow corridor surrounded by age-restricted casinos and bars.  Exhibits B and J.  During the limited periods of applicability, the Fremont Street Experience becomes the outdoor equivalent of a concert venue.  *Id.*  The area becomes extremely crowded and has been subjected to increasing numbers of violent incidents in 2021 and 2022.  Exhibit B.

As stated previously, these incidents are particularly difficult to control as crowds swell late into the evening on weekends.  Exhibit B.  FSE's Head of Security was sent to the hospital after a gang of young street performers beat him up, causing substantial injuries and broken bones.  Exhibit B.  In June and July 2022, there were five shootings on the Mall, one of which resulted in the death of a visitor to the Fremont Street Experience.  *Id.*; *see also* https://www.reviewjournal.com/crime/courts/suspect-in-fatal-fremont-street-experience-shooting-appears-in-court-2616411/.  This increase in violence, and in the number of violent incidents, directly paralleled a substantial increase in the number of young people under age 21 frequenting the Fremont Street Experience during late night hours on the weekend.  Exhibit B.  Often during these crowded periods, fights have started as a result of "disrespect" incidents in which one youth bumps into another (inadvertently or not), triggering escalating violent disputes, sometimes with guns and knives, that have resulted in death and serious bodily injury.  *Id.*  Prior to the issuance of the Permit, officials of Metro specifically offered its unequivocal and full-throated opinion that the increase in violence on the Fremont Street Experience was being caused directly by the sharp increase in persons under 21 visiting the Mall late at night on the weekends.  Exhibit B.  Metro officials specifically noted the so-called "disrespect" incidents as a trigger for violence.  *Id.*

Brownstein Hyatt Farber Schreck, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

17

As a result, there is clearly a substantial government interest in restricting the area at those limited times and area to persons over 21 in age.  And, notably, the Permit has in fact furthered public safety, as **there has not been a single robbery, shooting, or stabbing incident on the Fremont Street Experience on the weekend**.  Exhibit B.  Therefore, there can be no dispute that the Permit furthers the significant government interest of public safety.

   **iii.**  **The Permit is Narrowly Tailored.**

  "[A] regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests *but … it need not be the least restrictive or least intrusive means of doing so*." *Ward*, 491 U.S. at 798 (emphasis added); *see also Turner*, 512 U.S. at 662 (under intermediate scrutiny, "a regulation need not be the least speech-restrictive means of advancing the Government's interests.").  "Rather, the requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 799 (internal quotation omitted).  "So long as the means chosen are not *substantially* broader than necessary to achieve the government's interest … the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Id.* at 800 (emphasis added).  In other words, "[t]he validity of such regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests." *United States v. Albertini*, 472 U.S. 675, 689 (1985).

  The Permit is narrowly tailored to further the significant government interest of public safety.  This is no blanket restriction.  The Permit covers only half of the Fremont Street Experience.  It applies for a limited time, three nights a week, and is temporary.  Exhibits B and J.  The Permit is only effective from July 7, 2022 through November 28, 2022, and only applies from 8:00 p.m. to 5:00 a.m. on Friday, Saturday, and Sunday nights.  The Permit is notably narrower than a proposed ordinance that was recently considered by the City Council.  A copy of this proposed ordinance is attached to the Appendix as **Exhibit "W"**.  The proposed ordinance imposed a curfew on the **entirety** of the Fremont Street Experience **every** night of the week.  FSE did not actively support the proposed ordinance because, among other things, the Permit was already in place and

B**ROWNSTEIN** H**YATT** F**ARBER** S**CHRECK**, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

was effective even though it imposed lesser restrictions on the Fremont Street Experience than the proposed ordinance.  Exhibit B.  In addition, after the ACLU complained about the Permit, FSE urged the ACLU to suggest lesser alternatives.  *Id.*  ACLU would not do so.  *Id.*

FSE has no desire to incur the expense of the security obligations required to enforce the Permit *ad infinitum*.  *See* Exhibit B.  Erecting barricades and metal detectors, and staffing those checkpoints is expensive, and costs FSE approximately $8,000 per evening.  *Id.*  If the ACLU think that FSE has undertaken this obligation for the purpose of depriving the Plaintiffs of *something*, it has not.  This has literally become a "life or death" proposition involving public safety.

In other words, the Permit is narrowly tailored and is limited to those areas that were most impacted by recent violence, and the specific days and times when the violence was most likely to occur and most likely to have devastating consequences with the heavy crowds on the Mall.  And again, the Permit is working, as there has not been a single robbery, shooting, or stabbing incident on the Mall on the weekend since the Permit was issued.  Exhibit B.  Because the significant government interest of public safety would "be achieved less effectively absent the regulation," and the Permit is not "substantially broader than necessary to achieve the government's interest," the third prong of intermediate scrutiny is satisfied.  *Ward*, 491 U.S. at 799.

### iv.     The Permit Leaves Open Ample Alternative Channels for Communication.

"The First Amendment … does not guarantee … access to every or even the best channels or locations for … expression."  *Carew–Reid v. MTA*, 903 F.2d 914, 919 (2d Cir.1990) (citing *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 812 (1984)); *see also Heffron v. Intl. Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981) ("It is also common ground, however, that the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired").  Importantly, "[t]he Supreme Court generally will **not** strike down a governmental action for failure to leave open ample alternative channels of communication unless the government enactment will foreclose **an entire medium of public expression across the landscape of a particular community or setting**."  *Colacurcio v. City of Kent*, 163 F.3d 545, 555 (9th Cir. 1998) (emphasis added) (citing *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 525–27 (1981) (Brennan, J., concurring)).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

19

One of the fundamental problems with Plaintiffs' case is that they presume they have an entitlement to speak at any particular location of their choosing at all times. They do not. *See supra*. And they do night have a right to speak at any specific location on the Mall. Rather, the Permit leaves open ample alternative channels for communication, including three of the six blocks comprising the Fremont Street Experience at all times. As such, even when the Permit is in effect for its limited hours, people under 21 still have the other half of the Mall to engage in First Amendment activity. Also, people under 21 are only prohibited from a portion of the Mall from 8:00 p.m. to 5:00 a.m. on Friday, Saturday, and Sunday nights. In other words, people under 21 can access the **entire** Mall for 141 of the 168 hours in a week. Because the Permit does not "foreclose an entire medium of public expression across the landscape of a particular community or setting," the last prong of intermediate scrutiny is easily satisfied. *Colacurcio*, 163 F.3d at 555.

In sum, the Plaintiffs are not likely to succeed on the merits because the Permit is: (1) content-neutral; (2) narrowly tailored to serve a significant governmental interest; and (3) leaves open ample alternative channels for communication of the information. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

**E.     Plaintiffs' Challenge to the Ability of FSE to Operate the Fremont Street Experience Is Barred by Res Judicata and Has Been Waived.**

In an extraordinary overreach, Plaintiffs contend that LVMC Chapter 11.68 as a whole violates the First Amendment by "favoring" the FSE's speech over other individuals and permitting FSE to engage in activities where others are not allowed to do so. This argument fails, however, for several reasons. First, other courts in this district have already concluded that LVMC Chapter 11.68 is constitutionally firm and does not violate the First Amendment. Second, the doctrine of *res judicata* applies because the ACLU raised this same argument in the *ACLU I* Litigation, but voluntarily dismissed those same claims with prejudice. Third, the ACLU waived this argument because the ACLU actively participated on two occasions in the drafting of the current version of LVMC Chapter 11.68 and approved the ordinances as written. Fourth, the ACLU's argument is barred under the doctrine of equitable estoppel, again, because the ACLU participated in drafting the relevant ordinances and approved those ordinances as written.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1          *1.        Other Courts in this District Have Already Determined that LVMC 11.68 Does Not
2                    Violate the First Amendment.*

3          It is clear that Plaintiffs are unlikely to succeed on the merits of their claims given

4    that two other Courts in this district have already determined that LVMC Chapter 11.68's street

5    performer ordinances are valid under the First Amendment.  *Peck v. City of Las Vegas*, 2016 WL

6    4697339, at *12 (D. Nev. Sept. 6, 2016); *Ashley v. City of Las Vegas*, 2016 WL 6996999, at *2 (D.

7    Nev. Nov. 27, 2016).  In *Peck*, Judge Dorsey upheld the street performer rules under intermediate

8    scrutiny with one minor exception—she held that open performance spaces must be made available

9    on a first-come first-served basis.  In *Ashley*, Judge Navarro denied a street performer's motion for

10   preliminary injunction after finding that LVMC Chapter 11.68 is constitutionally valid under an

11   intermediate scrutiny standard.  Notably, the ACLU did not intervene in either of those cases.

12   Because multiple courts in this district have already upheld the constitutionality of LVMC Chapter

13   11.68, Plaintiffs are unlikely to succeed on the merits of this most recent challenge.

14         *2.        Plaintiffs' Claims Fail Under the Doctrine of Res Judicata.*

15         "The doctrine of *res judicata* provides that a final judgment on the merits bars

16   further claims by parties or their privies based on the same cause of action, and is central to the

17   purpose for which civil courts have been established, the conclusive resolution of disputes within

18   their jurisdiction."  *Headwaters Inc. v. United States Forest Serv.*, 399 F.3d 1047, 1051–52 (9th

19   Cir. 2005) (internal quotations omitted).  The elements necessary to establish *res judicata* are: "(1)

20   an identity of claims, (2) a final judgment on the merits, and (3) privity between parties."  *Tahoe–*

21   *Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir.2003).

22   Here, *res judicata* applies to the Plaintiffs' claim that LVMC 11.68 improperly exempts/favors the

23   FSE because the claim was actually raised and voluntarily dismissed in *ACLU I.*

24               **i.      There is an Identity of Claims.**

25         "Identity of claims exists when two suits arise from the same transactional

26   nucleus of facts."  *Tahoe-Sierra*, 322 F.3d at 1078 (internal quotations omitted).  This includes

27   claims that were actually brought in the first suit and claims that **could have been brought** under

28   the same facts.  *See id.* ("Newly articulated claims based on the same nucleus of facts may still be

subject to a *res judicata* finding if the claims could have been brought in the earlier action"); *U.S. ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 909 (9th Cir. 1998) ("Res judicata bars relitigation of all grounds of recovery that were asserted, **or could have been asserted**, in a previous action between the parties, where the previous action was resolved on the merits") (emphasis added).

There is undoubtedly identity of claims.  In *ACLU I*, the Plaintiffs asserted that LVMC Chapter 11.68 violated the First Amendment by, among other things, "prohibit[ing] street performers who might compete with the mall's entertainment."  Exhibit C at ¶ 36.  In the current case, the Plaintiffs are again alleging that LVMC Chapter 11.68 violates the First Amendment by favoring/exempting the FSE at the expense of street performers.  Motion at pp. 12-18; Verified Complaint, ECF No. 1, at ¶¶ 99-154.  In other words, the Plaintiffs' claims are based upon the "same transactional nucleus of facts" as the *ACLU I* Litigation.  *Tahoe-Sierra*, 322 F.3d at 1078. And because the Plaintiffs' claim was or could have be asserted in the *ACLU I* Litigation, the first element of *res judicata* is satisfied.

### ii.   There Was a Final Judgment on the Merits

A stipulated dismissal with prejudice operates as a "final judgment on the merits" for purposes of *res judicata*.   *See Headwaters*, 399 F.3d at 1052 ("We have held that a stipulated dismissal of an action with prejudice in a federal district court generally constitutes a final judgment on the merits and precludes a party from reasserting the same claims in a subsequent action in the same court.").  Here, there was a final judgment on the merits because the *ACLU I* Litigation was dismissed with prejudice pursuant to a stipulation in open court.  *See* Minutes of Proceedings, Case No. 2:97-cv-01419, at ECF No. 269.  As such, the second element of *res judicata* is satisfied.

### iii.   There is Privity Between the Parties

Privity exists when the new action involves the same parties as the prior action. *Headwaters*, 399 F.3d at 1053.  Privity also applies "to one who was **not** a party in the prior proceeding but whose interest was legally represented in [the prior proceeding]."  *Troutt v. Colorado W. Ins. Co.*, 246 F.3d 1150, 1159 (9th Cir. 2001) (emphasis added); *see also Richards v. Jefferson County, Ala.*, 517 U.S. 793, 798 (1996) ("[Privity do[es] not always require one to have

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1   been a party to a judgment in order to be bound by it."). In other words, privity exists when a party

2   to the new action had "his interests adequately represented by someone with the same interests who

3   [was] a party." *Richards*, 517 U.S. at 798 (internal quotations omitted).

4   Here, there is undoubtedly privity among the parties. Both the FSE and the ACLU were

5   parties to the *ACLU I* Litigation. Exhibit C. Moreover, the additional Plaintiffs that the ACLU

6   added to this case are also in privity because (1) Plaintiff McGrath is a current ACLU member; and

7   (b) the ACLU adequately represented those parties' interests in the *ACLU I* Litigation. ACLU has

8   "approximately 4,000 members in the State of Nevada" and "works to defend and advance the civil

9   liberties and civil rights of all Nevadans." ECF No. 1 at 5:18-24. Indeed, there can be no dispute

10  that all of the Plaintiffs in this case have the same interests as the ACLU given that **all of the**

11  **Plaintiffs in this case are represented by the ACLU's in-house counsel and filed a single**

12  **complaint**. Because there is privity among the parties to this case and the *ACLU I* Litigation, the

13  third *res judicata* element is satisfied. As such, the Plaintiffs are not likely to succeed on the merits

14  of their claims that 11.68 improperly exempts/favors the FSE, as those claims are barred by *res*

15  *judicata*.

16      *3.    Plaintiffs' Claims are Barred by the Doctrine of Waiver.*

17  "A waiver occurs when a party intentionally relinquishes a right or when that party's

18  acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such

19  right has been relinquished." *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 938 (9th Cir. 2017)

20  (internal quotations omitted).

21  The ACLU waived the right to challenge LVMC Chapter 11.68 as a whole, and the

22  street performer rules in particular, because the ACLU actively participated in drafting those

23  ordinances and expressly approved the final versions that were adopted by the Las Vegas City

24  Council in 2011 and 2015. In 2011, the ACLU stated before the City Council:

25      ALLEN LICHTENSTEIN, ACLU, commended CITY

26      ATTORNEY JERBIC and others for their time and efforts and
        expressed support for the proposed amendment. He echoed CITY

27      ATTORNEY JERBIC'S comments and agreed this amendment is
        workable and better for the Fremont Street Experience.

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

24721289

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  Exhibit D.  In 2015, with regard to the implementation of busker rules, the ACLU stated:

2  
3  MS. ROSE thanked those who participated in the process and for
   taking the protection of civil rights seriously. She stated that the
   amendment addresses the ACLU's concerns, but she will continue
   to monitor this to ensure that the ordinance is being applied properly.
4  

5  Exhibit H.  *See also* Exhibits E, F, and G.  Setting aside the boldness of Plaintiffs in challenging

6  the very ordinances the ACLU worked on and expressly endorsed before the City Council, and the

7  arguable frivolousness of such a claim given those facts, the doctrine of waiver bars the assertion

8  of this claim in its entirety.

9      *4.  Plaintiffs' Claims are Barred by the Doctrine of Equitable Estoppel.*

10      "Equitable estoppel generically precludes a party from asserting rights he otherwise

11  would have had against another when his own conduct renders assertion of those rights contrary to

12  equity." *Stafford v. Rite Aid Corp.*, 998 F.3d 862, 865 (9th Cir. 2021); *see also Knights of Columbus*

13  *v. Virginia Tr.*, 996 F. Supp. 2d 1038, 1043 (D. Nev. 2014) ("The doctrine of equitable estoppel

14  functions to prevent the assertion of legal rights that in equity and good conscience should not be

15  available due to a party's conduct") (internal quotations omitted).  Equitable estoppel applies when

16  four elements are satisfied:

17  
18  (1) the party to be estopped must know the facts; (2) he must intend
   that his conduct shall be acted on or must so act that the party
   asserting the estoppel has a right to believe it is so intended; (3) the
   latter must be ignorant of the true facts; and (4) he must rely on the
19  former's conduct to his injury.

20  *Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821 (9th Cir. 1992).

21      Like the doctrine of waiver, equitable estoppel prohibits the Plaintiffs from

22  challenging LVMC Chapter 11.68 as a whole, and the street performer rules in particular, because

23  the ACLU actively participated in drafting those ordinances and expressly approved the final

24  versions.  Again, the ACLU was involved in the amendment process for the purpose of ensuring

25  that the ordinances complied with the First Amendment.  Thus, all of the elements of equitable

26  estoppel are satisfied because: (1) the ACLU knew the language of the ordinances that it helped

27  draft and knew that it was approving those ordinances as written; (2) the ACLU intended for the

28  City Council to pass the ordinances based upon its approval; (3) if the ACLU actually believed that

24721289

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

the ordinances offended the First Amendment, the City Council could not have known that fact given the ACLU's approval; and (4) the City Council relied to its determinant on the ACLU's approval in passing the ordinances that are the subject of this lawsuit now filed by the ACLU.

**F.      FSE Does Not "Compete" with Plaintiff Gordon—It Provides a Multi-Million Dollar Attraction That Creates The Very Audience Mr. Gordon Seeks and LVMC Chapter 11.68 Survives Constitutional Scrutiny.**

Based upon the Complaint and the Motion, it appears that Plaintiff Kelvin Gordon is the only party claiming an actual "injury in fact" related to the LVMC Chapter 11.68 street performer ordinances. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (standing requires an injury in fact that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."). His broad challenge seems to complain about every single provision of LVMC Chapter 11.68, but does not get into the details of why any one specific provision violates the Federal Constitution, and offers no case law directing that any specific provision might be unlawful.

Rather, the Motion appears to be a lengthy rant against the fact that there are rules in the first place. Given that the ACLU helped draft and expressly approved these rules, these complaints are most generously described as perplexing. Regardless, Gordon's claims fail as a matter of law under either the commercial speech standard or a time, place, manner analysis.

And, Mr. Gordon's allegations that FSE "competes" with him and is allowed preferential treatment to his speech is bizarre. He seems to ignore that FSE has spent $400,000,000 to create, maintain, develop, clean, keep safe, provide free entertainment, and advertise the Fremont Street Experience, the forum to which FSE brings an average of 65,753 visitors per day. *See* Exhibit B. Mr. Gordon, who contributes nothing to the venue or its cost, is a free-rider who enjoys all of the benefits of the Fremont Street Experience without any of the responsibilities, and then takes umbrage that there are rules to follow on the Mall.

Mr. Gordon seems to concede that, as to his claims in this case, a commercial speech analysis applies. Indeed, Mr. Gordon is a professional street performer who works for money. He is represented by a talent agent and performs at the FSE for the purpose of receiving tips from the

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1  public.[10]  Because Gordon's motivation for performing at the FSE is unquestionably economic, the

2  commercial speech standard applies.  *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107 (9th Cir.

3  2021), quoting *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 516 (7th Cir. 2014).  *See also Hunt*

4  *v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (when deciding if speech is commercial,

5  the court considers, among other things, whether "the speaker has an economic motivation").

6     Regulations on commercial speech are scrutinized more leniently than regulations on fully

7  protected noncommercial speech.  *Board of Trustees v. Fox*, 492 U.S. 469, 477 (1989) ("Our

8  jurisprudence has emphasized that commercial speech enjoys a limited measure of protection,

9  commensurate with its subordinate position in the scale of First Amendment values, and is subject

10  to modes of regulation that might be impermissible in the realm of noncommercial expression")

11  (internal quotations omitted).  A regulation on commercial speech is valid if it: (1) directly advances

12  a substantial governmental interest; and (2) is not more extensive than necessary to serve that

13  interest.  *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566

14  (1980).

15     *1.*  *LVMC Chapter 11.68 Directly Advances a Substantial Governmental Interest.*

16     Two Courts in this district have already determined that the street performer

17  ordinances in LVMC Chapter 11.68 advance a substantial government interest.[11]  *Ashley v. City of*

18  *Las Vegas*, 2016 WL 6996999 (D. Nev. Nov. 27, 2016); *Peck v. City of Las Vegas*, 2016 WL

19  4697339, at *9 (D. Nev. Sept. 6, 2016).

20     In *Ashley*, the Court recognized that cities have a substantial government interest in

21  protecting the public from excessive noise.  *Ashley,* 2016 WL 6996999, at * 3 (citing *Ward*, 491

22  U.S. at 796.).  The Court found that LVMC Chapter 11.68 directly advances that substantial interest

23  by "ensur[ing] visitors can enjoy both the Mall's main attractions and the street performances."  *Id.*

24

25  [10] https://alansands.com/contortionists/kelvin-gordon-malenga-mtakata.

26  [11] These courts reviewed the ordinances under the normal intermediate scrutiny test for time, place,
    and manner restrictions, which includes the same two factors as the commercial speech test –
27  substantial government interest and narrow tailoring.  Although Mr. Gordon is a professional
    performer whose economic motivation warrants review under the commercial speech test, LVMC
28  Chapter 11.68 has already survived scrutiny under the time, place, and manner test articulated here.

24721289

The Court also recognized that cities have a substantial interest in "ensuring public safety and order, promoting the free flow of traffic on streets and sidewalks, [and] protecting property rights.'" *Id.* at * 4 (quoting *McCullen v. Coakley*, 573 U.S. 464, 486 (2014). The Court found that LVMC Chapter 11.68 advances that substantial interest because "the contested ordinances were enacted in response to issues concerning traffic congestion, monopolization of locations by street performers, and violence towards visitors and other street performers." *Id.*

In *Peck,* the Court found that LVMC Chapter 11.68 advances substantial government interests for similar reasons. *See Peck*, 2016 WL 4697339, at *11 ("The City's reasons for establishing the performance zones and corresponding lottery for reserving them—ensuring public safety and order and the free flow of pedestrian traffic on a congested public Mall—are substantial government interests."). Because LVMC 11.68 directly advances substantial governmental interests, the first element of the commercial speech standard is satisfied.

    2.    *LVMC 11.68 is not more extensive than necessary.*

Under the commercial speech standard, the regulation does not have to be "the least-restrictive means to accomplish the government's goal." *Contest Promotions, LLC v. City and County of San Francisco*, 874 F.3d 597, 602 (9th Cir. 2017) (internal quotations omitted). "Rather, what is required is a reasonable fit between the ends and the means, a fit that employs not necessarily the least restrictive means, but a means narrowly tailored to achieve the desired objective." *Id.*

Again, two Courts in this district have already concluded that LVMC Chapter 11.68 is narrowly tailored to further the City's substantial interests. *See Ashley*, 2016 WL 6996999, at *4 ("the Court finds these ordinances narrowly tailored to achieving the government's significant interest"); *Peck*, 2016 WL 4697339, at *11 ("I conclude that the designated performance zones and corresponding lottery system to use them are narrowly tailored time, place, and manner restrictions that do not burden substantially more speech than is necessary to achieve a substantial government interest.").

The findings in *Ashley* and *Peck* apply equally here. Specifically, under LVMC Chapter 11.68, Mr. Gordon may perform inside or outside the Permit area, as it appears he is well over 21 years old and the Permit does not limit him from performing in the age-restricted area in

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1   any way.[12]   When the street performer lottery is in place, Mr. Gordon may perform if he has

2   procured a lottery spot.  He may also perform in most places on the Fremont Street Experience

3   during the day, as street performers are only required to participate in a lottery and perform in

4   designated locations from 3:00 p.m. to 1:00 a.m. every day.  *See* LVMC §§ 11.68.020 and 11.68.107.

5   In other words, LVMC Chapter 11.68 is narrowly tailored to only address those locations and times

6   that are most impacted by traffic congestion, monopolization of locations by street performers, and

7   where public safety is at issue, while still giving street performers like Gordon ample alternative

8   opportunities to perform on the premises.  As such, the second element of the commercial speech

9   standard is satisfied and the Plaintiffs are not likely to succeed on the merits of this claim.

10   **G.     Plaintiffs McGrath, Fullmore, and the ACLU Lack Standing**

11          In order to invoke the jurisdiction of federal courts, a plaintiff must establish the three

12   elements of standing: (1) injury in fact, (2) causation, and (3) a likelihood that a favorable decision

13   will redress the plaintiff's alleged injury.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  The

14   injury in fact must constitute "an invasion of a legally protected interest which is (a) concrete and

15   particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Id.* at 560 (internal

16   quotations omitted); *see also Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010) ("The

17   touchstone for determining injury in fact is whether the plaintiff has suffered an injury or threat of

18   injury that is credible, not 'imaginary or speculative'") (internal quotations omitted).  The plaintiff

19   must prove injury in fact "in the same way as any other matter on which the plaintiff bears the

20   burden of proof, i.e., with the manner and degree of evidence required at the successive stages of

21   the litigation."  *Lujan*, 504 U.S. at 561.  "Therefore, at the preliminary injunction stage, a plaintiff

22   must make a 'clear showing' of his injury in fact."  *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir.

23   2010) (quoting *Winter v. Nat. Resources Def. Council*, Inc., 555 U.S. 7, 22 (2008)).  The only

24   parties appearing to challenge the Permit's age restriction are Plaintiffs McGrath, Fullmore, and

25   the ACLU.  *See* Motion at 10:8-17.  Those parties lack standing, however, because they have not

26   suffered an "injury in fact" as a result of the Permit.

27

28   _____
[12] Mr. Gordon does not allege he is under 21 years old, in which case he would not have standing
to challenge the constitutionality of the Permit.

Brownstein Hyatt Farber Schreck, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

24721289

McGrath and Fullmore assert they have standing because they made a single attempt to enter the FSE "to view artistic performances by street performers, take photographs and videos, and walk the corridor," but were denied entry because they are under 21 years old. *See* Complaint, ECF No. 1 at ¶ 16. Setting aside their factual inaccuracy (as they were able to visit three of the six blocks of the Mall without restriction), it appears that the ***real*** purpose of their single visit to the FSE was ***not*** to engage legitimate First Amendment activity, but as a pretext to manufacture standing for a First Amendment claim. Indeed, McGrath – who is an ACLU member – and Fullmore made their single visit to the FSE on August 12, 2022, a mere two days after the ACLU of Nevada's executive director publicly promised litigation over the Permit in the news.[13] Because McGrath and Fullmore's sole motivation was manufacturing a lawsuit—instead of engaging in legitimate First Amendment activity—they cannot claim an actual "injury in fact" from the Permit. *See Lujan*, 504 U.S. at 560 (the injury in fact must be "actual or imminent, not conjectural or hypothetical.").

The ACLU's claim of standing is even more tenuous. The ACLU argues that but for the Permit, it would "invite staff, members, and/or volunteers under the age of 21, including from ACLU of Nevada's collegiate chapter 'UNLV People Power,' to engage in these [First Amendment] activities." *See* Complaint, ECF No. 1, at ¶ 17. Setting aside that the ACLU clearly has members aged 21 and over, allegations of hypothetical "invitations" to unnamed people are not concrete or particularized enough to constitute an "injury in fact." *Lujan*, 504 U.S. at 560 (an injury in fact must be " actual or imminent, not conjectural or hypothetical"). The Permit first took effect on July 12, 2022, and only applies from 8:00 p.m. to 5:00 a.m. on Friday, Saturday, and Sunday nights. There is absolutely no evidence that the ACLU has ever tried to "invite" these unnamed people to the FSE during those days/times to engage in First Amendment activity, or that those unnamed people would even take the ACLU up on its "invitation." There is also no evidence that the ACLU ever extended similar "invitations" prior to July 12, 2022, or that anyone actually showed up to the FSE based upon those prior invitations. Simply put, the ACLU's claim of "injury

---

[13]   https://news3lv.com/news/local/aclu-threatens-litigation-after-fremont-street-experience-21-only-signs-stay-up

24721289

in fact" is pretextual, based upon **nothing** but a desire to commence a lawsuit for the purpose of filing a lawsuit.  It is not something that is "concrete and particularized." *Lujan*, 504 U.S. at 560.  Because the Plaintiffs have not suffered an "injury in fact," they lack standing to challenge the Permit's age restriction.  As such, the Plaintiffs are not likely to succeed on the merits.

**H.      This Court Should Allow for Expedited Discovery Before Ruling on the Motion.**

Many of the facts alleged by Plaintiffs in their TRO are objectively wrong.  For example, the Permit does not cover the entirety of the Fremont Street Experience, only half of it.  In addition, Mr. Gordon's cart is not allowed upon and does not comply with LVMC Chapter 11.68.  That being said, there are numerous other factual allegations for which discovery is required.  And, as stated previously, it appears that Plaintiffs ACLU, McGrath, and Fullmore do not possess standing, as their August visit to the Fremont Street Experience was an apparent pretext to establish injury in fact where none existed.  As such, FSE seeks to conduct the following pre-hearing discovery and before it is required to opposed Plaintiffs' Motion for Preliminary Injunction (ECF No. 8):

- Inspection of Mr. Gordon's box and cart referred to in the Motion;

- Inspection of any box used by Mr. Gordon in his performances over the years;

- Document requests to the ACLU, McGrath, and Fullmore regarding visitations to Mall and in particular the alleged visit in August 2022, as well as and the genuineness of Plaintiffs' claims; and

- Limited depositions of Gordon, McGrath, Fullmore, and the ACLU's declarant, concerning standing and the genuineness of Plaintiffs' claims.

FED. R. CIV. P. 26(d)(1) generally places a "hold" on discovery until after the parties meet and confer about the case.  *See* Hon. William W. Schwarzer, et al., FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 13:157 (2022).  Despite that "hold," parties may seek and obtain an order to conduct immediate discovery pending hearing on a request for injunctive relief based upon urgent need for the information sought.  *Id.*, citing *Stanley v. University of S. Cal.*, 13 F.3d 1313, 1326 (9th Cir. 1994).  At this point, FSE, the City, and this Court are left to take Plaintiffs at their word that their standing is legitimate, that Mr. Gordon's "box" is really 40 pounds, and numerous other matters to

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1   which Plaintiffs assert facts without evidentiary support.  To that extent, FSE seeks preliminary

2   discovery in advance of the hearing on this Motion.

### IV.

### CONCLUSION

5       Based upon the foregoing, FSE respectfully requests that this Court deny Plaintiffs' motion

6   for extraordinary injunctive relief and ask that this Court allow preliminary discovery in advance of

7   the hearing.

8       FSE thanks the Court for its time and attention to this matter.

9       DATED this 30th day of September, 2022.

/s/ *Patrick J. Reilly*
Patrick J. Reilly
Eric D. Walther
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614

*Attorneys for The Fremont Street Experience Limited Liability Company*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

24721289

1

## CERTIFICATE OF SERVICE

2     Pursuant to Fed. R. Civ. P. 5(b), and Section IV of District of Nevada Electronic Filing

3  Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK,

4  LLP, and that the foregoing **OPPOSITION TO MOTION FOR TEMPORARY**

5  **RESTRAINING ORDER AND REQUEST FOR EXPEDITED DISCOVERY PENDING**

6  **HEARING** was served via electronic service on the 30th day of September, 2022, to the addresses

7  shown below:

8  Christopher M. Peterson, Esq.            John A. Curtas, Esq.
   Sophia A. Romero, Esq.                   City of Las Vegas
9  AMERICAN CIVIL LIBERTIES UNION OF        City Attorney's Office – Civil Division
   NEVADA                                   jacurtas@lasvegasnevada.gov
10 peterson@aclunv.org
   romero@aclunv.org                        *Attorneys for The City of Las Vegas.*
11
   *Attorneys for Plaintiffs*
12

13

14                                              __/s/ Paula Kay_____

15                                          an employee of BROWNSTEIN HYATT FARBER
                                            SCHRECK, LLP
16

17

18

19

20

21

22

23

24

25

26

27

28

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

24721289

**INDEX OF EXHIBITS**

| Exhibit No. | Description | Page Nos. | Volume |
|---|---|---|---|
| A | Declaration of Patrick Hughes | FES_APPX0001-0008 | 1 |
| B | Declaration of Andrew Simon | FES_APPX0009-0016 | 1 |
| C | Amended Complaint, Case No. CV-S-97-01419 | FES_APPX0017-0034 | 1 |
| D | Minutes of City Council Meeting, January 18, 2011 | FES_APPX0035-0098 | 1 |
| E | Minutes of City Council Meeting, February 2, 2011 | FES_APPX0099-0101 | 1 |
| F | Minutes of City Council Meeting, August 5, 2015 | FES_APPX0102-0103 | 1 |
| G | Minutes of City Council Meeting, September 2, 2015 | FES_APPX0104-0112 | 1 |
| H | Minutes of City Council Meeting, September 16, 2015 | FES_APPX0113-0119 | 1 |
| I | List of 21 and Over Age-Restricted Special Event Permits | FES_APPX0120-0238 | 2 |
| J | List of Age-Restricted Permits issued to Fremont Street Experience since 2015 | FES_APPX0239-0277 | 2 |
| K | Festivus Special Event Permit | FES_APPX0278-0283 | 2 |
| L | Video (Manually Filed with the Court) | FES_APPX0284 | 2 |
| M | Video (Manually Filed with the Court) | FES_APPX0285 | 2 |
| N | Video (Manually Filed with the Court) | FES_APPX0286 | 2 |
| O | Video (Manually Filed with the Court) | FES_APPX0287 | 2 |
| P | YouTube Video (Manually Filed with the Court) | FES_APPX0288 | 2 |
| Q | YouTube Video (Manually Filed with the Court) | FES_APPX0289 | 2 |
| R | Video (Kelvin Behind Circle 18) (Manually Filed with the Court) | FES_APPX0290 | 2 |
| S | List of Kelvin Gordon Busker Violations | FES_APPX0291-0299 | 2 |
| T | Video (Manually Filed with the Court) | FES_APPX0300 | 2 |
| U | Video (Manually Filed with the Court) | FES_APPX0301 | 2 |

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

24721289

| Exhibit No. | Description | Page Nos. | Volume |
|---|---|---|---|
| V | Video (Manually Filed with the Court) | FES_APPX0302 | 2 |
| W | Proposed Ordinance, Bill No. 2022-19 | FES_APPX0303-307 | 2 |

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

24721289